GEORGE E. FRAZER et al. Appellants, vs. A. M. SHELTON, Appellee.

*Opinion filed February 18, 1926.*

1. CONSTITUTIONAL LAW—*Accountancy act of 1925 is invalid as conferring special privileges.* The Accountancy act of 1925, in failing to specify the means whereby a person residing within the State may become a certified public accountant subsequent to the first day of October, 1925, confers special privileges on those who were certified public accountants prior to that date and on those who hold unrevoked licenses from other States, as the only provision in the act for examination and the issuing of a certificate to any other person applies to public accountants, only; and the act makes other unjust discriminations in regard to previous experience of public accountants applying for a certificate prior to the date mentioned and in regard to the annual fees of certified public accountants.

2. SAME—*general rule as to when exemption in favor of existing occupations is valid.* While a statute intended to be prospective may provide that it shall not apply to those already in the occupation to be licensed, under conditions named, such exemption must be made to apply equally to all similarly situated.

3. SAME—*statute must apply to all persons or cases of the same kind.* A statute cannot be sustained which applies to some persons or cases and does not apply to all persons or cases not essentially different in kind.

4. SAME—*right to pursue ordinary trade or business is both a liberty and a property right.* The right of a citizen to pursue an ordinary trade or calling upon equal terms with all other persons similarly situated is a part of his right to liberty and property but is subject to the reasonable exercise of the police power.

5. SAME—*a statute restricting ordinary occupations must be within the police power.* The end to be secured by the exercise of the police power is the furtherance of the public health, com-

fort, safety or welfare, and unless an act restricting the ordinary occupations of the citizens can be shown to be adapted to that end such act is void, as violating the right of the citizens to liberty and the pursuit of happiness.

6. SAME—*Accountancy act of 1925, making it unlawful to practice accountancy without certificate, is not within the police power.* The Accountancy act of 1925, making it unlawful to practice the business of accountancy by a person acting as an accountant for more than one person without a certificate, as provided in the act, is not a proper exercise of the police power, as there is nothing in the business of accountancy requiring such restriction for the protection of the public welfare, and the act is an unwarranted regulation of private business and the right of a citizen to pursue the ordinary occupations of life.

7. WORDS AND PHRASES—*meaning of the words "accountant" and "accounting."* An "accountant" is one who is skilled in, keeps or adjusts accounts, and "accounting" is the act or system of making up or stating accounts.

APPEAL from the Circuit Court of Sangamon county; the Hon. ELBERT S. SMITH, Judge, presiding.

DEFREES, BUCKINGHAM & EATON, and DODD, MATHENY & EDMUNDS, (GEORGE T. BUCKINGHAM, WALTER F. DODD, and DON KENNETH JONES, of counsel,) for appellants.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill against appellee, as director of the Department of Registration and Education of the State of Illinois, seeking to enjoin the enforcement of a certain act relating to the business of accounting, on the ground that the act is unconstitutional, unreasonable, and constitutes an arbitrary and improper exercise of the police power of the State. Appellee demurred to the bill and the demurrer was sustained. Appellants having elected to abide the

bill the same was dismissed for want of equity. The cause is brought here for review and various grounds of attack on the constitutionality of the act are assigned and argued.

The statutes attacked are, first, an act entitled "An act in relation to the practice of public accountancy and to repeal a certain act therein named," passed by the legislature in 1925, (Laws of 1925, p. 505,) and a companion act amending section 60 of an act commonly known as the Civil Administrative Code. (Laws of 1925, p. 577.) The attack on the latter act is based on the invalidity of the Accountancy act, against which the arguments of counsel are leveled.

The first section of the Accountancy act provides that after the first day of October, 1925, it shall be unlawful for any person to practice or attempt to practice as a public accountant or certified public accountant without a certificate of registration as such issued by the Department of Registration and Education pursuant to the amendment of section 60 of the Civil Administrative Code, hereinbefore referred to. "Public accountancy" is defined by section 2 of the act as "accounting or auditing service as distinguished from book-keeping, on a fee basis, per diem or otherwise, for more than one employer." It is provided by section 3 of the act that any citizen of the United States, or one who has declared his intention of becoming such, and who resides in or has a place for the transaction of business as a public accountant in the State, if he be over the age of twenty-one years, of good moral character, has an education equivalent to a four-year course in high school, and has received from the Department of Registration and Education, under the provisions of the act, a certificate of his qualifications to practice as a public accountant, shall be styled and known as a public accountant, "and no other person shall assume such title or use any abbreviation thereof, or other words or letters signifying that the person using the same is a public accountant, except as permitted by this act." It is also provided in that section that

five years' experience of the applicant as a public account-
ant in business for himself or in the employ of a public
accountant shall be accepted as equivalent to a high school
education.   Section 4 provides that any person having the
qualifications referred to in section 3, and who shall have
received from the Department of Registration and Educa-
tion, under the provisions of the act, a certificate of his
qualifications to practice as a certified public accountant,
shall be styled and known as a certified public accountant,
and "no other person shall assume such title or use the ab-
breviations 'C. P. A.' or any other words or letters signi-
fying that the person using the same is a certified public
accountant, except as permitted by this act."   It is made
clear by these provisions that one who has received from
the Department of Registration and Education a certificate
qualifying him to practice as a public accountant is not en-
titled, under the act, to hold himself out as a certified pub-
lic accountant or use the letters "C. P. A." or any words
or letters of such significance, and that one who has not
received a certificate provided for in these or subsequent
sections is not permitted to practice accountancy for more
than one employer.   Section 5 provides that the Depart-
ment of Registration and Education shall make the neces-
sary rules and regulations regarding examinations and the
time thereof.   Section 6 specifies the subjects on which ex-
aminations shall be held.   It then provides: "Each candi-
date who passes said examination shall thereupon receive
a certificate of his qualifications to practice as a public ac-
countant from the department, which certificate shall state
that said candidate has successfully passed the examination
in order to be qualified and known as a 'public accountant'
and shall authorize the said successful candidate to so style
himself and to be known as such."   Section 7 fixes the fees
for such examination.   By section 8 it is provided that
those who shall have received a certificate as a certified
public accountant from the University of Illinois under the

Accountancy act of 1903 may practice under this law without further examination. By section 9 any person holding a valid and unrevoked certificate as a certified public accountant issued by any other State or territory or by the District of Columbia who desires to practice as a certified public accountant in this State may present his application for a certificate as a certified public accountant in this State, together with the required fee and such information as the department may consider necessary, and the department, if it be satisfied that the requirements for a certificate in such other State or territory or in the District of Columbia are equivalent to those in this State and that the applicant has the qualifications required of an applicant in this State, may issue a certificate as a certified public accountant to such applicant without examination, provided such other State or territory or the District of Columbia extends a similar privilege to certified public accountants of this State. Section 10 provides for the revocation of certificates issued under this act or any prior act. It is provided by section 11 that nothing in the act shall prohibit a certified public accountant holding an unrevoked certificate issued in compliance with the law of another State, from practicing in this State and styling himself a certified public accountant, provided he register annually with the department and pay the annual license fee provided in the act. All who are permitted by the department to practice as certified public accountants or as public accountants are required by section 12 of the act to pay an annual license fee of five dollars. By this section it is made unlawful for any public accountant under this act to practice as such after ten days from the date on which such license fee is due. Certified public accountants do not appear to be made subject to this penalty. Section 13 is as follows: "The Department of Registration and Education shall waive the examination and issue a certificate to any person who is a citizen of the United States or has duly declared his intention of becom-

ing a citizen, who resides in the State of Illinois and who applies therefor on or before October 1, 1925, permitting such person to practice as a public accountant: *Provided,* that such person, on July 1, 1925, shall be practicing as a public accountant on his own account, or shall have had five years' experience in the employ of either a certified public accountant or a public accountant." By section 14 it is provided that nothing in the act shall be construed to prevent the employment by a certified public accountant or public accountant, or a firm of such, of unlicensed employees, provided such employees work under adequate control and supervision of a certified public accountant or licensed public accountant, and provided that such employees do not certify to the accuracy of any audit or statement made by them or their employer. Section 15 provides the penalties for a violation of the act, and section 16 provides that certified public accountants or public accountants of other States may practice in this State in pursuance of any engagement originating from without this State, provided such accountants register with the department and pay the annual license fee. Section 17 repeals the act of 1903 relating to certified public accountants.

By the amendment of section 60 of the act known as the Civil Administrative Code it is provided that the Department of Registration and Education shall designate a board of three persons for the purpose of assisting in the carrying out of the act in relation to accountancy. It is provided that this board shall consist of one public accountant, one certified public accountant and one lawyer, each of whom has been actively engaged in the practice of public accountancy or of law for at least five years next preceding his appointment. It is by that act made their duty to conduct necessary investigations and examinations and report to the department.

Appellants contend that the Accountancy act is unconstitutional for the reason that it violates section 22 of article 4

of the constitution, prohibiting special privileges, and the fourteenth amendment to the constitution of the United States, in that it denies equal protection of the laws. It is also contended that the act is an unreasonable exercise of the police power.

In support of the first contention it is pointed out that the act confers a special privilege on a limited class of persons, namely, those persons who on the first of October, 1925, were holding certificates as certified public accountants, and those who under the reciprocity provision in section 9 hold unrevoked certificates as certified public accountants from other States or such as are included in section 11, and that no other person may practice in Illinois as a certified public accountant and no citizen of the State may become such under the act. If this complaint is well founded the act is invalid as contravening section 22 of article 4 of the constitution of this State, which provides: "The General Assembly shall not pass local or special laws * * * granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." An examination of the act shows that no provision is made for licensing any citizen of Illinois as a certified public accountant who was not such at the time the act went into effect. The only provision for the issuance of a certificate by the Department of Registration and Education in case of examination, or to any one after October 1, 1925, other than persons holding foreign certificates or certificates under the act of 1903, is found in section 6, where it is provided that each candidate who passes the examination shall receive a certificate of his qualifications to practice as a public accountant, and he shall be qualified and known as a public accountant. Section 4 of the act provides that anyone who shall receive a certificate of his qualifications to practice as a certified public accountant under the act may be known and styled as such, and no other person may assume the title or use the insignia thereof,

either by words or letters. Under the act the only persons, other than those holding foreign certificates, who may receive certificates as certified public accountants are those who were certified public accountants on October 1, 1925. By section 3 any person who has received a certificate from the department entitling him to practice as a public accountant may be known as such and no other person shall assume that title.

While the examinations provided for in section 6 take no account of distinctions between public accountants and certified public accountants, by section 4 a person who receives a certificate as a "public accountant" may not hold himself out as a "certified public accountant," for, as we have seen, the language of that section is, "no other person" shall assume the title or use the insignia of the title of certified public accountant. The qualifications prescribed by sections 3 and 4 of the act for public accountant and certified public accountant are the same except the requirement that the certificate of the board be had, which in section 3 is a certificate as public accountant and in section 4 a certificate as a certified public accountant. It appears clear, therefore, that the act necessarily operates to the advantage of the few persons who held certificates as certified public accountants prior to October 1, 1925, and those holding such certificate from an outside State, and discriminates against all other persons engaged in the business of accountancy, none of whom can ever become a certified public accountant in this State. An accountant who is employed by more than one employer, thereby under section 2 of the act practicing public accountancy, or one who is certified as a public accountant who desires to take an examination and have issued to him a certificate showing that he is a certified public accountant, finds in the act no means of accomplishing that end. The department is by the act given no authority to issue any certificate except that of public accountant.

Appellee contends that there is no difference between a public accountant and a certified public accountant; that the law recognizes none, and that one who is, in fact, certified by the department as a public accountant is, in effect, a certified public accountant. This contention is not sustained by the language of the act. Section 4, as we have seen, prohibits the use of the term "certified public accountant" by any person who does not meet the description of a certified public accountant as given in the act, and there is no way in which he can do so. It will be also noted that throughout the act accountants appear to be classified as public accountants and certified public accountants. The companion act amending section 60 of the Civil Administrative Code specifies that the examining board shall consist of one public accountant, one certified public accountant and one lawyer. Throughout the history of the law in relation to accountancy in this and other States there runs a distinction between a public accountant and a certified public accountant. In this State, under the act of 1903, (Smith's Stat. 1925, chap. 110½,) the opportunity to receive a certificate from the University of Illinois as a certified public accountant, under the examinations prescribed, was open to anyone. No one was denied the privilege of holding himself out as a public accountant. Legislation on this subject in this and other States indicates that there is in the public mind, and in legislation as well, a recognized distinction between a public accountant and a certified public accountant. The act under consideration here not only does not destroy that distinction, but, on the other hand, accentuates it. In the States of Louisiana, Maryland, Michigan, North Carolina and Tennessee acts have been passed providing for the registration of accountants, both as certified public accountants and as public accountants. In none of these States except Tennessee is one prohibited from practicing accountancy, but the certificate as certified public accountant is by the act taken as evidence of investi-

gation and certification of certain qualifications which are not so signified by the certificate as public accountant. No one in the four States mentioned is denied the right to do accounting for as many persons as will employ him. Numerous States have likewise provided that certain audits and investigations shall be made by certified public accountants. In Massachusetts the legislature in 1921 passed an act authorizing certified public accountants, approved by the State Commissioner of Banks, to make audits of savings banks. (Mass. Gen. Laws of 1921, chap. 168, sec. 17.) In Pennsylvania it is provided that certain school districts may employ certified public accountants to audit their books. (Pa. Laws of 1925, secs. 2603, 2523.) In Michigan, finance companies operating under declarations of trust are required to be examined by the State Banking Commissioner, who is in turn authorized to accept the report and audit of a certified public accountant in place of such examination. (Mich. Pub. Acts of 1925, p. 461.)

Accounting, or auditing, by reason of very great increase in industrial development, has become a vocation of increasing importance. In addition to its many uses in a commercial way those uses have increased under various laws concerning municipalities and through the taxing provisions of State and Federal laws. In 1924 Congress created the United States Board of Tax Appeals, authorized to adopt rules pertaining to the conduct of its business. An examination of those rules discloses that the only accountants authorized to appear and practice before those boards are certified public accountants. From a consideration of these various laws and the usages commonly known to all engaged in such business as requires the services of an accountant, it must be said that there is in the public mind a marked distinction to be drawn between a public accountant and a certified public accountant, and it is evident that the act under consideration here does not tend to destroy such distinction. That distinction, together with the fact

that under this act no citizen of Illinois not now a certified public accountant can become such, clearly demonstrates a special privilege accorded to those who are allowed to hold themselves out as certified public accountants and a discrimination against those who are not allowed so to do or to become certified public accountants. This discrimination is not founded on any reasonable basic classification.

There is another unreasonable discrimination appearing in the act. By section 13, as we have seen, examinations are waived and certificates must be issued to any person who is a citizen of the United States or has duly declared his intention to become such, who resides in this State and who applies, on or before October 1, 1925, for a certificate permitting him to practice as a public accountant, provided such person shall on July 1, 1925, be practicing as a public accountant on his own account or shall have had five years' experience in the employ of either a certified public accountant or a public accountant. By this act, one who on June 30, 1925, commences practicing as a public accountant on his own account may register as such on or before October 1, 1925, because he was practicing as a public accountant on his own account on July 1, 1925, and this though he shall have had no previous experience, while one who has had four years and eleven months' experience in the employ of either a certified public accountant or a public accountant cannot receive a certificate as public accountant without examination. There is no reasonable basis for the discrimination between such two persons. While a statute intended to be prospective may provide that it shall not apply to those already in the occupation to be licensed, under conditions named, (*People* v. *Logan,* 284 Ill. 83; *People* v. *Evans,* 247 id. 547; *Williams* v. *People,* 121 id. 84;) such exemption must be made to apply equally to all similarly situated. Again, by section 9 of the act a person holding a certificate as a certified public accountant of another State or territory who desires to be registered and receive a cer-

tificate as a certified public accountant of this State must pay the sum of $25, and if he would escape examination he must satisfy the department that the State issuing the certificate to him has requirements equal to those of this State and that the applicant is qualified to that extent, though under section 11 one who holds a certificate of certified public accountant of another State or territory may come into this State and practice by registering and paying the annual license fee of five dollars. So far as the provisions of the act are concerned, he may move into the State and continue his business as a certified public accountant without the certificate of the department that he is qualified as such and without inquiry on its part as to the requirements of the State issuing the certificate to him. It is thus seen that in the second case a certified public accountant under a foreign certificate, merely by registering and paying the annual fee, has all the benefits of the act that would flow to such certified public accountant who desires to have or has the certificate of the department of this State. Again, by section 12 public accountants are subject to a penalty should they practice when their annual license fee is ten days overdue, though no such penalty is imposed on certified public accountants. A statute cannot be sustained which applies to some persons or cases and does not apply to all persons and cases not essentially different in kind. *Josma* v. *Western Steel Car Co.* 249 Ill. 508; *Off & Co.* v. *Morehead,* 235 id. 40; *Braceville Coal Co.* v. *People,* 147 id. 66; *Frorer* v. *People,* 141 id. 171; *Millett* v. *People,* 117 id. 294.

Another question is raised. It is objected that the act is an unreasonable exercise of the police power. The term "police power" comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to maintain the public health, comfort, safety and welfare. Section 1 of article 2 of the constitution provides: "All men are by nature free and independent, and have certain inherent and inalienable rights—among these are

life, liberty, and the pursuit of happiness." The right to
follow any of the common occupations of life is an in-
alienable right. That right is one of the blessings of lib-
erty, and is accorded as a privilege to the citizens of the
United States by the preamble to the Federal constitution,
and by the Declaration of Independence, under the language,
"pursuit of happiness." The right of a citizen to pursue
ordinary trades or callings upon equal terms with all other
persons similarly situated is a part of his right to liberty
and property. (*Bessette* v. *People,* 193 Ill. 334; *Allgeyer*
v. *Louisiana,* 165 U. S. 578; *Powell* v. *Pennsylvania,* 127 id.
678.) "Liberty," as used in the constitution, embraces the
free use by all citizens of their powers and faculties, subject
only to the restraints necessary to secure the common wel-
fare. The right to contract is both a liberty and a property
right. (*Frorer* v. *People, supra; Braceville Coal Co.* v. *Peo-
ple, supra.*) It is, of course, well established that the right
to liberty, property and the pursuit of happiness is subject
to the reasonable exercise of the police power of the States.
The end to be secured by the exercise of the police power
is the furtherance of the public health, comfort, safety or
welfare, and unless an act restricting the ordinary occupa-
tions of the citizen can be shown to fall within the police
power such act is void, as violating the right of the citizen
to liberty and the pursuit of happiness. Whether or not
the regulation of an occupation has in it the elements of
protection to the public health, comfort, safety or welfare
is a matter not always easy to determine. The question is
here presented, Does the business of accounting affect the
public health, comfort, safety or welfare? Unless it does
its restriction is not permitted under the constitution. It
is readily seen that the profession of law, by reason of its
influence on the safety of the rights of property and lib-
erty, does affect the public welfare; that the science of
medicine, surgery and other treatment of human ills or
the prevention of disease directly affects the public health;

and that the manner of construction of buildings may well be said to affect the public safety. What is there in the business of accounting upon which the exercise of the police power may be based? Any act of accounting, as distinguished from book-keeping, when for more than one employer, is deemed by this act to be public accounting and may not be engaged in without the prescribed certificate. The statute in this case is not limited to those who would do an accounting business with municipalities or other public agencies, therefore the necessity for police regulation must appear, if at all, by reason of the relationship of an accountant to private business concerns by which he is employed and thereby to the public welfare. An "accountant," as that term is defined by standard lexicographers, is one who is skilled in, keeps or adjusts accounts. Accounting is defined as the act or system of making up or stating accounts. It is readily seen that an incompetent accountant may render an inaccurate report and cause his employer to make a business error. This creates no effect upon the public, however, unless the relationship existing between the public welfare and the private business so affected is so close as to establish that influence. Assuming that an audit shows a business failure, such failure, while by no means desirable, does not ordinarily affect the public welfare, and if it did, it is not the work of the accountant but the condition of the business that bears such influence. In order to say that private business must, in the interest of public welfare, employ one certified by the State, it must appear that the effect of an audit of that business is a matter of public welfare and not of private concern. If it is the latter, the audit has no element of public welfare in it, and a law prohibiting or licensing the business of one who makes such audit is but an unwarranted regulation of private business and the right to contract. To say that private business must submit to an audit on stated occasions goes no further, in

principle, than to say that private business may not employ whom it chooses to make such audit. While restrictions of such a character are imposed upon public utility corporations by reason of the interest of the public therein, no law, so far as we are advised, has gone to the extent of attempting to so regulate purely private business. The business of accounting for private employers has in it none of the elements of a public utility. Laws passed by various States on this subject have authorized the conferring of degrees upon accountants who pass an examination or have provided for the issuance of certificates of qualification. These laws have been passed in the interest of those engaged in the business and for their protection and advantage rather than in the interest of the public welfare.

Counsel for appellee have cited cases which hold that the accountancy acts considered therein are valid. The acts referred to in those cases, however, contained no provision prohibiting any citizen following the business of an accountant though employed by more than one employer. They are acts which regulate the use of the term "public accountant" or "certified public accountant." Section 1 of the act under consideration here makes it unlawful for one who has not been certified by the Department of Registration and Education to practice the business of accountancy, which section 2 defines as such employment by more than one employer.

In *People* v. *Marlow*, 203 N. Y. Supp. 474, a law prohibiting the use of the degree or title of certified public accountant, or "C. P. A.," by one who had not obtained a certificate from a designated board was sustained on the ground that public accountancy is a well recognized business, and that the following of that business was not by the act made to depend upon the issuance of a license or special qualification, but the statute prohibited the use of such title or degree without the certificate of the board.

In *Henry* v. *State,* 97 Tex. Crim. 67, 260 S. W. 190, Henry was prosecuted for holding himself out as a holder of a degree as a certified public accountant and using the initials "C. P. A.," though a statute of that State prohibited the use of such term without proper certificate. The law was sustained, and the court stated that the act was not invalid since it did not inhibit the pursuit of the occupation of accountant but only the unauthorized use of the term "certified public accountant" or the letters "C. P. A."

In *Lehmann* v. *State Board of Public Accountancy,* 208 Ala. 195, 94 So. 94, a law requiring a certificate of a designated board as a prerequisite to the use of the term "certified public accountant" or the letters "C. P. A." was held valid because the restriction was with reference to the accountant holding himself out as a certified public accountant, and it is pointed out that the act did not prohibit any citizen from following the vocation of an accountant. To the same effect is *State* v. *DeVerges,* 153 La. 349, 95 S. E. 805.

Counsel have cited no case, and we are aware of none, which holds valid an act which prohibits a citizen following the occupation of accountant or limits his employment to one person or firm unless he have a certificate. In *State* v. *Riedell,* 233 Pac. (Okla.) 684, a law similar to the one under consideration here was held invalid as not within the police power in so far as it prevented the practice of accountancy without a certificate of a board created by the act. An act designed to secure the comfort, safety, or welfare of the public must appear to be adapted to that end. It cannot invade the rights of personal liberty or of property under the guise of police regulation, when, in fact, it bears no reasonable relation to some purpose within the power of the State. Burdensome restrictions may not be imposed on the ordinary vocations of the citizen unless such restrictions are necessary in the furtherance of some purpose within the competency of the State. *People* v. *Love,* 298 Ill. 304;

*People* v. *Steele*, 231 id. 340; *Ritchie* v. *People*, 155 id. 98; *Meyer* v. *Nebraska*, 262 U. S. 399; *Pierce* v. *Sisters of Holy Name*, 268 id. 510.

We do not say that it is beyond the power of the General Assembly to enact a statute requiring that no one shall use the term "certified public accountant" or the term "public accountant" without having met the requirements of such an act. Such a provision may well be within the power of the legislature on the ground that it is to the public interest that no one shall use a term indicating that' he has been examined and certified as an accountant when such is not the fact. Of such character was the Accountancy act of 1903, herein referred to. By section 6 of that act anyone who represented himself to the public as having received the certificate provided by the act, or who made use of the term "certified public accountant" or its abbreviation, was declared guilty of a misdemeanor. Such is a misrepresentation which the legislature may prevent by statute. There is, as we view it, however, a wide difference between acts of such character and one which provides that no one who has not received a certificate as public accountant from the Department of Registration and Education shall be allowed to work at the business or occupation of accountancy for more than one person. Such an act does not spring from a demand for the protection of the public welfare, but is an unwarranted regulation of private business and the right of the citizen to pursue the ordinary occupations of life. For these reasons it was error to sustain the demurrer and dismiss the bill.

The decree of the circuit court is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*