E. McD. Campbell, Complainant, Appellant, *v.* Thos. M. McIntyre *et al.*, Defendants, Appellees.

(*Nashville,* December Term, 1931.)

Opinion filed July 23, 1932.

THOMAS G. HINSON, ALLISON HUMPHREY, JR., and JAMES A. NEWMAN, for complainant, appellant.

L. D. SMITH, Attorney-General, and E. F. HUNT, Assistant Attorney-General, for defendants, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Complainant, describing himself as having been a trained accountant since 1919, filed his bill in this cause against the members of the State Board of Accountancy, created by Public Acts 1925, chapter 33, carried into the Code of 1932 at sections 7083-7097, asserting that the enforcement of said statute operates to deprive him of rights guaranteed by article 1, section 8, and article 11, section 8, of the Constitution of Tennessee. By demurrer to the bill, the defendants pleaded the constitutionality of the statute. The Chancellor sustained the demurrer

and dismissed the bill, from which decree complainant has appealed.

The bill seeks no relief other than a decree that the statute is unconstitutional, preserving complainant's rights *in futuro,* as in a suit under the declaratory judgments law. The statute of 1925 having been replaced by the sections of the legislative code above cited, enacted after the bill was filed, we will consider the questions made by the appeal as concerned with the statute as it is brought into the code.

The legislation under attack creates a State Board of Accountancy, charged with the duty of certifying the qualifications of persons to follow the business of a public accountant, such certificates to be issued after examination. Annual registration of certificate holders is required, upon which registration a license is issued.

Section 7095 of the Code provides that the license "shall be issued only to certified public accountants and public accountants qualifying under this or prior statutes;" and makes it unlawful, punishable as a misdemeanor, for any person "to practice public accounting, without first having registered with the board and received a license to practice."

The same section of the Code defines the practice of public accounting: "For the purposes of this section a person engages in the practice of public accounting when he performs accounting work as distinguished from bookkeeping on a fee basis, per diem, or otherwise, for more than one employer. In passing on this question the board will consider specific acts as well as general business conduct."

The statute thus makes it unlawful for an accountant to render his services in accounting work to more than one employer, without first satisfying the Board of Accountancy of his qualifications for performing such service, and receiving its certificate. The prohibition of the statute is not restricted to accountants who hold themselves out to the general public as open to employment, but is applicable to all who serve more than one employer.

This legislation superseded and replaced Public Acts 1913, chapter 17, which provided for the examination and certification of accountants, and made it unlawful for a person to represent himself as a certified or chartered accountant without first qualifying as such; but that statute contained no prohibition of the practice of accounting by one who did not so represent himself to the public or his employers. Such regulation of the business has been generally sustained as reasonable and valid. *State* v. *DeVerges,* 153 La., 349, 95 So., 805, 27 A. L. R., 1526, and note.

Complainant contends that the restriction of the right to practice accounting to certified accountants is arbitrary and unreasonable class legislation, making of certified accountants a favored class with monopolistic privileges conferred upon them, citing the Constitution, article 11, section 8; and that the statute "denies private business the right to contract with whomsoever they wish to contract in purely personal matters," in violation of the "Bill of Rights" contained in the Constitution.

Legislative prohibition of the right to practice accounting, except after qualifying in the manner required by this statute, has been declared void as an arbitrary and

unreasonable exercise of the police power of the state, by the courts of two states, Oklahoma and Illinois, with no cases ruling the contrary to be found. *Short* v. *Riedell,* 109 Okla., 35, 233 Pac., 684, 42 A. L. R., 765; *Frazier* v. *Shelton,* 320 Ill., 253, 150 N. E., 696, 43 A. L. R., 1086.

Current legislative history, both state and national, indicates that it is now more important to the preservation of constitutional government that emphasis be placed, in statement, upon the constitutional restraints on the police power of the legislature, rather than upon the extent to which that broad power may be exercised.

■ Complainant is invoking individual rights as a citizen to engage in a private business or vocation, without unreasonable or arbitrary restraint. In *New State Ice Co.* v. *Liebmann,* — U. S., —, 76 L. Ed., —, decided by the Supreme Court of the United States March 21, 1932, that Court recognized the principle invoked by complainant:

"Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under review, cannot be upheld consistent with the 14th Amendment. Under that amendment nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily (to) interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' *Jay Burns Baking Co.* v. *Bryan,* 264 U. S., 504, 513, 68 L. Ed., 813, 826, 32 A. L. R., 661, 44 S. Ct., 412, and authorities cited; *Louis K. Liggett Co.* v. *Baldridge,* 278 U. S., 105, 113, 73 L. Ed., 204, 208, 49 S. Ct., 57."

The able dissenting opinion filed in that case does not controvert the fundamental principle of personal rights defined in the excerpt quoted, but the dissent was predicated upon the view of the minority Justices that the legislative determination of the existence of grounds for imputing a public utility character to a previously recognized private business, as the basis of the regulation attacked, was a reasonable exercise of legislative discretion, and therefore not subject to judicial veto.

In *Meyer* v. *Nebraska*, 262 U. S., 390, 67 L. Ed., 1042, the Supreme Court referred to the liberty guaranteed to a citizen by the 14th Amendment to the Constitution of the United States as including "the right of the individual to contract, to engage in any of the common occupations of life," and said: "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive, but is subject to supervision by the courts. *Lawton* v. *Steele,* 152 U. S., 133, 137, 38 L. Ed., 385, 388, 14 Sup. Ct. Rep., 499."

The recognition of the personal rights of individuals found in the 14th Amendment to the Constitution of the United States is substantially the same as in article 1, section 8, and article 11, section 8, of the Constitution of Tennessee. *Motlow* v. *State,* 125 Tenn., 547, 590, L. R. A., 1916F, 177. In the case cited, the limits of judicial review of legislative discretion, in the exercise of the police power, are defined, and this statement, from the point

of view indicated hereinabove, marks the responsibility of the courts for the preservation of personal rights against legislative encroachment. The Court said: "In determining whether such act is reasonable, the courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the State or federal constitution."

We are therefore required to determine and rule in the cause before us whether the restriction of the occupation of accounting to persons examined and approved by a board or commission has a real tendency to promote or protect the public interest and safety, whether it bears a reasonable relation to such end, and whether the interests of the public generally, as distinguished from the interests of a particular class, reasonably require the protection of this restrictive legislation. Conceding that all questions of policy, involving the wisdom or folly of the legislation, are beyond and outside the scope of judicial review, it cannot be denied that a sound judicial discretion is essential to the determination of the questions of reasonableness and relation of the restriction to the public interest presented by complainant's invocation of the constitutional provisions. Vested with this discretion, the courts may not shirk its exercise.

The courts of Oklahoma and Illinois, in the cases cited, were able to find nothing in this restriction of the practice of accounting which would sustain it as a reason-

able requirement in the public interest, and concluded that it is an unreasonable and arbitrary restraint upon the right of individuals to engage in the occupation, as well as upon the right of individuals to contract with and employ persons for accounting service. The definition of "public accounting" contained in the statute, including the service of as many as two employers under private contract, is convincing that the restriction is designed for the protection of accountants certified and licensed, and not for the protection of the public in general; and we are persuaded that the statute confers upon this class a right of private contract which is unreasonably withheld from others.

This preference is unreasonable and arbitrary, because it is an unreasonable and arbitrary restriction upon the right of private contract to require examination and approval as a condition precedent to the right of persons to pursue the occupation of accounting under private contract with other persons or business enterprises. Incompetent performance of such contracts does not directly affect the public, but affects only the parties thereto. If a governmental certificate of solvency were required as a condition to the right of individuals to purchase goods on credit, or to borrow money, the general public might be remotely benefited, but the requirement would clearly be an unwarranted invasion of private business by governmental authority. The public interest in private auditing contracts is no more apparent. In our opinion, whatever of benefit might accrue to the public from the restriction here involved must yield to the rights of private contract guaranteed by the constitution, such benefit being too remote and indefinite to render the restriction reasonable.

The Attorney-General, as counsel for the defendants, suggests that if we should conclude that the prohibition of code section 7095 is unreasonable and therefore unenforceable, as we have done, this section should be elided, leaving the remainder of the chapter in full force and effect.

The decree which the pleadings, and conclusions reached in this cause, authorize is only that the provisions of said section 7095 (section 7 of the Act of 1925) are ineffective to bar the complainant from the practice of accounting, without obtaining certificate and license from the defendants, constituting the State Board of Accountancy. Whether the other provisions of this chapter of the Code can be enforced, notwithstanding the conclusions here reached, may well be left primarily to the administrative officers of the State. The complainant, desiring to pursue his occupation without qualifying as a "certified" accountant, is not interested in the enforcement of the provisions for examination and certification, and the question of elision is therefore not properly before us in this cause.

The decree of the Chancellor, by which complainant's bill was dismissed, will be reversed, and decree will be entered here in accord with the preceding paragraph. The defendants, appellees, will pay the costs.