WANGERIN and others, Appellants, vs. WISCONSIN STATE
BOARD OF ACCOUNTANCY and others, Respondents.

*November 9—December 8, 1936.*

*Joseph Lieberman* of Milwaukee and *James H. Christensen* of Chicago, Illinois, for the appellants.

For the respondents there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *George D. Spohn* of Milwaukee, special counsel, and oral argument by *Mr. Spohn.*

ROSENBERRY, C. J.   The practice of accounting was first regulated in this state by the enactment of ch. 337, Laws of 1913 (secs. 1636—202 to 1636—211).   By that act a state board of accountancy was created with authority to hold examinations and to issue certificates entitling the holders thereof to practice as "certified public accountants."   The board was given authority by the act to revoke a certificate for "unprofessional conduct or other sufficient cause."   The act provided that, if any person should represent himself to the public as having received the certificate provided for by the statute, or should assume to practice as a certified public accountant, a certified accountant, a chartered public accountant, a chartered accountant, or to use the abbreviation C. P. A., or any other words, letters, or abbreviations of similar import without having received a certificate to practice as a

certified public accountant, he should be deemed guilty of a misdemeanor and might be punished by fine or imprisonment, or both.

It is conceded that the act was a valid enactment. *Lehmann v. State Board of Public Accountancy* (1922), 208 Ala. 185, 94 So. 94; *State v. De Verges* (1923), 153 La. 349, 95 So. 805; *Henry v. State* (1924), 97 Tex. Cr. Rep. 67, 260 S. W. 190; *People v. Marlowe* (Sp. Sess. 1923), 203 N. Y. Supp. 474.

Ch. 337, Laws of 1913, was supplanted by ch. 481, Laws of 1935, which became ch. 135 of the Wisconsin Statutes, and will hereafter be so referred to. The 1935 law appears to be a very carefully drafted act. Sec. 135.01 provides for the creation of the "Wisconsin State Board of Accountancy" to be composed of three persons, and vested in the board when created certain powers not necessary to be described here, and made certain provisions as to the manner in which these powers were to be exercised. Sec. 135.02 is an elaborate definition of what is meant by practicing as a public accountant.

A consideration of the provisions of this section discloses that anyone who holds himself out to the public as one skilled in the knowledge, science, and practice of accounting, and is ready to render professional service as an accountant for compensation, brings himself within the provisions of the statute. Subs. (2), (3), (4), (5), (6) relate to particular ways in which a person may so hold himself out. Sub. (7) permits the employment of nonlicensed persons by one who is himself a certified public accountant or a public accountant. Sub. (8) excepts attorneys from the operation of the chapter. In view of the claims made by plaintiffs, sub. (9) is important. It provides:

"Nothing contained in this chapter shall apply to any persons who may be employed by more than one person, partnership or corporation, for the purpose of keeping books, making

trial balances or statements, and preparing audits or reports, provided such audits or reports are not used or issued by the employers as having been prepared by a public accountant."

Sub. (10) relates to accountants from other states practicing within this state.

Sec. 135.03 (1) prohibits any person from practicing as a certified public accountant until he has complied with the provisions of the chapter. Sub. (2) prohibits any person from practicing as a public accountant without having been granted a certificate of authority. Sub. (3) relates to practice by corporations and their officers.

Sec. 135.04 provides that no certificate as a certified public accountant shall be granted to any person except one over the age of twenty-three years and of good moral character, who has successfully passed an examination. Sub. (3) relates to holding examinations. Sub. (4) provides that anyone seeking a certificate as a certified public accountant must have completed four years' high school course or its equivalent, had at least three years' accounting experience, and provides that a sufficient technical education may be accepted in lieu of a certain amount of accounting experience.

Sec. 135.05 relates to the issuance of certificates to persons from other states or foreign states. Sec. 135.06 (1) provides:

"The board shall issue a certificate of authority to practice as a public accountant to each individual who applies before December 1, 1935, who presents evidence of good moral character satisfactory to the board, and

"(a) Who furnishes satisfactory evidence he was maintaining an office in the state for the practice of public accounting on his or her own account at the date of the taking effect of this chapter; or

"(b) Who for four years has been in responsible charge of accounting engagements in the state of Wisconsin as an employed member of the staff of a certified public accountant

or a public accountant, or of a firm of certified public accountants or public accountants; or,

"(c) Who, in the opinion of the board, has had four years' experience equivalent to that specified in paragraph (b) of this subsection."

Subs. (2) and (3) relate to certificates issued to firms and corporations.

Sec. 135.07 specifies the conditions under which one may use the title of C. P. A. Sec. 135.08 relates to the annual registration. Sec. 135.09 prescribes the fees to be paid. Sec. 135.10 requires any certified public accountant or public accountant who makes a report, schedule, or statement for a corporation in which he has an interest, to disclose that interest. Sec. 135.11 relates to the penalties for violation of the act. Sec. 135.12 relates to the revocation of licenses and registration cards.

Plaintiffs contend that ch. 135 is unconstitutional because, (1) it is an unlawful and arbitrary exercise of the police power; (2) it delegates legislative and judicial powers to the' board; (3) it is class legislation; and (4) it is an invasion of the right to be free from unlawful search and seizure.

It appears from the allegations of the complaint that the plaintiffs were entitled to be registered as public accountants upon application any time before December 1, 1935. Plaintiffs do not claim that they applied for registration or that it was denied them upon any ground or for any cause whatever. They are therefore not in a position to question the validity of those provisions of the statute relating to fixing of standards, examinations, revocation of licenses, etc. *Arnold v. Schmidt* (1913), 155 Wis. 55, 143 N. W. 1055; *Milwaukee v. Rissling* (1924), 184 Wis. 517, 199 N. W. 61.

The plaintiffs have, however, raised the question of the validity of the statute as a whole. Their principal contention is that the practice of accounting is not subject to regu-

lation by the state because accountancy does not affect the public welfare, and the act is therefore an unlawful and arbitrary exercise of the police power which infringes the freedom of contract. Plaintiffs rely upon three cases: *State ex rel. Short v. Riedell* (1925), 109 Okla. 35, 233 Pac. 684, 42 A. L. R. 765; *Frazer v. Shelton* (1926), 320 Ill. 253, 150 N. E. 696, 699, 43 A. L. R. 1086; and *Campbell v. McIntyre* (1932), 165 Tenn. 48, 52 S. W. (2d) 162.

*Campbell v. McIntyre* follows *Frazer v. Shelton.* All matters urged in *State ex rel. Short v. Riedell* are considered in *Frazer v. Shelton.* We shall therefore confine our consideration to the holding in *Frazer v. Shelton.* There are some significant differences in the law of Illinois and the provisions of ch. 135, Wis. Stats. The Illinois law made it unlawful for any person to practice, or attempt to practice, as a public accountant or certified public acountant without a certificate of registration. It then defined public accounting as accounting or auditing service as distinguished from bookkeeping on a fee basis, per diem, or otherwise, for more than one employer. Ch. 135 provides that one who holds himself out to the public as skilled in the knowledge and science of accounting shall be deemed to be practicing accountancy, which is quite a different thing. No one is prohibited by ch. 135 from rendering any service he chooses as a bookkeeper, and may make such statements as his employers desire him to make, provided his employers do not use these statements as having been prepared by a public accountant. It is only when a person holds himself out to the public as one qualified to practice accountancy as defined in the statute that he comes within it. There is another defect in the Illinois law. The court said:

"An examination of the act shows that no provision is made for licensing any citizen of Illinois as a certified public accountant who was not such at the time the act went into

effect. . . . Section 4 of the act provides that anyone who shall receive a certificate of his qualifications to practice as a certified public accountant under the act may be known and styled as such, and no other person may assume the title or use the insignia thereof, either by words or letters. Under the act the only persons, other than those holding foreign certificates, who may receive certificates as certified public accountants, are those who were certified public accountants on October 1, 1925. . . . The fact that under this act no citizen of Illinois not now a certified public accountant can become such, clearly demonstrates a special privilege accorded to those who are allowed to hold themselves out as certified public accountants and a discrimination against those who are not allowed so to do or to become certified public accountants. This discrimination is not founded on any reasonable basic classification."

All qualified persons seeking a license as certified public accountants are entitled to receive it upon compliance with ch. 135. The chapter makes provision for those already engaged in the practice of accountancy as prescribed therein who do not seek a license as certified public accountants by permitting them to practice as public accountants. By the terms of the act all those who were engaged in the profession of public accounting when the act took effect are entitled to certificates of authority. In making provision for those already engaged in the practice of accountancy, the legislature followed a well-established precedent. The same thing was done as to physicians, ch. 264, Laws of 1897; as to dentists, ch. 129, Laws of 1885; as to pharmacists, ch. 167, Laws of 1882; as to chiropractors, ch. 408, Laws of 1925; as to chiropodists, ch. 550, Laws of 1917; as to barbers, ch. 191, Laws of 1903. Such statutes are valid. *Watson v. Maryland* (1910), 218 U. S. 173, 30 Sup. Ct. 644.

Plaintiffs complain because, as they say, they are demoted in their business if they seek certification as public accountants; that by obtaining such a certificate they are assigned

to an inferior position in the profession. If they are so assigned, it is because of their qualifications, not because of the statute. If they are qualified, they may be licensed certified public accountants and take what they apparently regard as first rank in the profession. The statute might very well have required all persons who sought to practice public accountancy to comply with the statute and procure a license. The right to be certified as a public accountant is something in the nature of a privilege and a recognition of an existing status. Plaintiffs cannot complain because they are not given a status to which their qualifications do not entitle them.

The supreme court of the state of Illinois in *Frazer v. Shelton, supra,* reached the conclusion that the statute there under consideration was unconstitutional because it forbade anyone who had not received a certificate as public accountant from the department of registration and education to work at the business of accountancy for more than one person, and deemed that an unwarranted regulation of private business. The court said:

"We do not say that it is beyond the power of the general assembly to enact a statute requiring that no one shall use the term 'certified public accountant' or the term 'public accountant' without having met the requirements of such an act. . . . There is, as we view it, however, a wide difference between acts of such character and one which provides that no one who has not received a certificate as public accountant from the department of registration and education shall be allowed to work at the business or occupation of accountancy for more than one person. Such an act does not spring from a demand for the protection of the public welfare, but is an unwarranted regulation of private business and the right of the citizen to pursue the ordinary occupations of life."

The prohibition in the Illinois statute is much broader than that contained in ch. 135, Wis. Stats., which is set out *supra* (sec. 135.02 (9) ).

A person may under contract act as bookkeeper for as many persons or firms as he chooses. It is when he holds himself out to the public as one skilled in the profession of accounting that he comes within the statute. So far as we are able to discover, no similar provision was embodied in the statutes under consideration by the supreme court of Illinois. Ch. 135 leaves the occupation of a bookkeeper untouched. A bookkeeper can do anything now that he could do before the chapter was enacted, except that he cannot represent himself to be a public accountant. He can render the same service to his employers as any other accountant may render, but it cannot be put before the public as work of a public accountant or a certified public accountant. Ch. 135 deals solely with the relation of the practice of accountancy to the public, not to private individuals and firms. In *Frazer v. Shelton, supra,* the court made a study of several acts in different jurisdictions, and it appears that there are statutes relating to accountancy in Louisiana, Maryland, Michigan, North Carolina, Tennessee, Massachusetts, Pennsylvania, and New York. We call attention to this fact as indicating that the legislatures of the various states consider that the business of accountancy should be regulated in the public interest. As pointed out in the briefs of counsel, the field of accountancy has become greatly enlarged and much more important than formerly. We now have income tax laws, estate and inheritance tax laws, legislation on the sale of securities—blue sky laws, social security legislation, and unemployment insurance with pay roll taxes, bank legislation, real-estate brokers' laws, unfair trade practice acts, besides all of the work done by accountants in the field of rate regulation, insurance practice, public utility rates, sale of securities, largely resting upon the reputation of the accountants who do the accounting, and many other aspects of the matter which make the whole subject of public accountancy a proper

field for the exercise of the police power in the interest of the public welfare.

This court has taken a somewhat different view than the supreme court of the state of Illinois in relation to police-power measures. Compare *People v. Griffith* (1917), 280 Ill. 18, 117 N. E. 195, relating to the practice of optometry with *Price v. State* (1919), 168 Wis. 603, 171 N. W. 77, relating to the same subject. It is by no means certain that the supreme court of Illinois would hold an act like ch. 135 invalid.

*By the Court.*—The order appealed from is affirmed.