Perry A. CHAPDELAINE, Appellant,

v.

TENNESSEE STATE BOARD OF EX-
AMINERS FOR LAND SURVEYORS
et al., Appellees.

Supreme Court of Tennessee.

Aug. 23, 1976.

Perry A. Chapdelaine, pro se.

R. A. Ashley, Jr., Atty. Gen., Nashville, C. Hayes Cooney, Chief Deputy Atty. Gen., Nashville, for appellees.

FONES, Justice (dissenting).

I respectfully dissent from 541 S.W.2d 786.

The right to pursue one's occupation is an inherent property right protected by the due process clause of our State and Federal Constitutions. *Livesay v. Tennessee Board of Examiners in Watchmaking,* 204 Tenn. 500, 322 S.W.2d 209 (1959), *Harbison v. Knoxville Iron Company,* 103 Tenn. 421, 53 S.W. 955 (1899).

Stating the issue to be decided in *Livesay,* Mr. Justice Tomlinson observed that interference with an individual's inherent property right to pursue his occupation is not constitutionally permissible except insofar as such interference may be justified by the police power of the state. "Beyond that limitation it is the taking, in effect, of property belonging to another." 322 S.W.2d at 211.

In *Campbell v. McIntyre,* 165 Tenn. 47, 52 S.W.2d 162 (1932), Mr. Justice Swiggart cites and quotes from a number of United States Supreme Court cases firmly establishing the doctrine that under the Fourteenth Amendment, it is beyond the power of a State to prohibit the pursuit of lawful occupations or impose unreasonable and unnecessary restrictions upon them, under the guise of protecting the public interest; and that a declaration by the Legislature of what constitutes the public interest is not final or conclusive but is subject to supervision by the courts.

The test that should be applied in determining whether the restriction on land surveying is within the police power is the same as that stated in *Campbell* with respect to the occupation of accounting.

"We are therefore required to determine and rule in the cause before us whether the restriction of the occupation of accounting to persons examined and approved by a board or commission has a real tendency to promote or protect the public interest and safety, whether it bears a reasonable relation to such end, and whether the interests of the public generally, as distinguished from the interests of a particular class, reasonably require the protection of this restrictive legislation. Conceding that all questions of policy, involving the wisdom or folly of the legislation, are beyond and outside the scope of judicial review, it cannot be denied that a sound judicial discretion is essential to the determination of the questions of reasonableness and relation of the restriction to the public interest presented by complainant's invocation of the constitutional provisions. Vested with this discretion, the courts may not shirk its exercise." 165 Tenn. at 53, 52 S.W.2d at 164.

The following observations by the Supreme Court of North Carolina in *State v. Harris,* 216 N.C. 746, 6 S.E.2d 854 (1940), appropriately emphasize the importance of the constitutional rights at stake in this case:

"It follows that there is a well recognized gap between the regulation of a business or occupation and restrictions preventing persons from engaging in them to which courts must pay careful attention. While many of the rights of man, as declared in the constitution, contemplate adjustment to social necessities, some of them are not so yielding. Among them the right to earn a living must be regarded as inalienable. Conceding this, a law which destroys the opportunity of a man or woman to earn a living in one of the ordinary harmless occupations of life by the erection of edu-

cational and moral standards of fitness is legal grotesquery." 6 S.E.2d at 863.

"Resort to the police power to exclude persons from an ordinary calling, finding justification only by the existence of a vague public interest, often amounting to no more than a doubtful social convenience, is collectivistic in principle, destructive to the historic values of these guaranties, and contrary to the genius of the people who did all that was humanly possible to secure them in a written constitution." 6 S.E.2d at 865.

I have found only one reported case that squarely considers the issue of whether the occupation of land surveying affects the public health, safety or welfare to the extent that its pursuit or practice in the private sector may be constitutionally restricted to those persons approved by a legislatively established Board. That case is *Doe v. Jones,* 327 Ill. 387, 158 N.E. 703 (1927). Our present licensing act is similar to the Illinois Act involved in *Jones.* The definition of a land surveyor in the Illinois Act is, " . . . a person who for a consideration establishes one or more corners or boundaries of any tract or lot of land and executes and issues plats thereof signed by himself as a surveyor." Ill.Rev.Stat. (Smith-Hurd 1925), Chapter 133, Section 18. Both acts exempt employees of the United States, the state and its political subdivisions and prohibit the practice of land surveying by any person who does not hold a certificate of registration issued by the State Board. Thus, both Acts are aimed solely at regulating the practice of land surveying in the private sector. I find the following portions of the opinion of the Supreme Court of Illinois in *Doe v. Jones, supra,* to be significant and persuasive on the constitutional issue in this case:

"It is urged by appellant that this act violates the constitutional provision against unreasonable discrimination and that it is void as not within the police power of the state. This act is in many respects similar, in effect to the act concerning the licensing of public accountants, considered by this court in *Frazer v. Shelton,* 320 Ill. 253, 150 N.E. 696, 43

A.L.R. 1086, and there held invalid as not within the police power. That question arises here concerning the regulation of land surveyors. The police power of the state is exercised for the furtherance of the public health, comfort, safety, or welfare, and, unless an act restricting the ordinary occupations of life can be shown to fall within the police power, such act is void. It is not to be doubted that such occupations as the practice of medicine and surgery and other treatment of human ills, and the profession of law by reason of its influence on the protection and safety of the rights of property and liberty, do affect the public welfare, as does the manner of construction of buildings affect the public safety. These occupations, therefore, may properly under the police power, be regulated. What then, is there in the occupation of land surveying that brings its regulation within the safeguards of the police power? Under this statute county surveyors and employees of a city, county, the state, and the United States are exempt from the act. In other words, those having to do with surveying for the public are not required to be licensed. There is seen in the act, therefore, no element of public welfare as such pertains to the protection of the public business. It appears that the surveyors coming under the act are those whose practice is largely confined to private contract. . . . As a result of the operation of the statute in question, private individuals desiring a survey must select their surveyor from those licensed by the board, and, in the absence of an element of public safety or welfare, such is an unwarranted limitation on the right of contract and a void interference with private business. As was said by this court in *Frazer v. Shelton,* supra:

'In order to say that private business must, in the interest of public welfare, employ one certified by the state, it must appear that the effect of an audit of that business is a matter of public welfare and not of private concern.'

If the effect of the work of a land surveyor is but a matter of private con-

cern, the law regulating and licensing it as a business is an unwarranted regulation of private business and of the right to contract. . . .

Counsel for appellees urge that, since architecture and structural engineering have been held to be occupations that may be regulated and licensed, land surveying should likewise be so held. Architecture and structural engineering directly affect the public safety, in that the construction of houses in cities is of substantial influence in affecting the danger from fire and other causes. We are unable to see wherein the determination of a corner as established by the government is a matter which comes within the police power of the state to regulate. For the reasons given in the case of *Frazer v. Shelton,* supra, and cases there cited, we are constrained to hold that the act is invalid as not within the police power of the state." 158 N.E. at 705, 706.

In *Ford Motor Company v. Pace,* 206 Tenn. 559, 335 S.W.2d 360 (1960) the Supreme Court of Tennessee had under consideration the constitutionality of a 1955 act licensing and regulating those engaged in the business of manufacturing, distributing or selling motor vehicles. Mr. Justice Burnett, writing for the Court drew a distinction between a licensing act that restricts individuals from the pursuit of an occupation, and a regulatory act involving an entire industry such as the automobile industry. In the course of making that distinction, the Court said:

"The Act in question does not involve watch repairers or makers, housepainters, paper hangers, land surveyors, morticians, dancing schools, horse shoers, dry cleaners, layers of drain tile and things of that kind, which have been correctly held beyond the police power of the Legislature for the very apt and fine reasons as set forth in the *Livesay* case, supra." 335 S.W.2d at 363.

It is true that the question of whether land surveying is subject to the police power of the State was not an issue in that case, and the statement was dictum and not controlling precedent. Nevertheless, it is persuasive that a prior court of entirely different composition than the present Supreme Court, in listing useful, common, and innocuous occupations that readily come to mind as not involving the public welfare, included land surveying.

The State's brief lists forty-two (42) of our sister states as having acts regulating land surveying. I have read many of those acts and find that a number of our sister states include regulation of land surveying within an act regulating the practice of all the engineering professions. I also observe that Alabama and a number of other states make no exception for public employees engaged in engineering or land surveying, and require persons engaged in land surveying for public or governmental agencies to be licensed.

The practice of land surveying was pursued in the State of Tennessee for the first one hundred and seventy-one (171) years of our history without regulation. No evidence was offered that land surveying has become more complicated than in former times, or that our state is rife with incompetent practitioners, or that other circumstances now exist that justify prohibiting the pursuit of this occupation, in the private sector, by any person not certified by the board.

In *Davis v. Allen,* 43 Tenn.App. 278, 307 S.W.2d 800 (1957) the 1955 Act regulating public accountants and certified public accountants was under attack. The same constitutional infirmities relied upon here were asserted. In distinguishing the contrary holding in *Campbell v. McIntyre, supra,* Judge Felts called attention to the distinction made in *Campbell* between a statutory prohibition that requires licensing for all who hold themselves out to the general public as an accountant and a blanket requirement of licensing for all who perform bookkeeping for more than one employer. The 1925 Act in effect when *Campbell* was decided, defined the practice of public accounting in terms of all persons who *performed* accounting work for more than one employer whereas the 1955 Act

applied only to those who held themselves out to the public as skilled in the knowledge, science and practice of accounting. The Court in *Davis v. Allen, supra,* concluded that the later act did not touch the right of private contract where there was no holding out to the public and therefore avoided the constitutional infirmity of an unreasonable and arbitrary restriction on a common occupation and the right to contract privately in pursuit thereof, condemned in *Campbell.*

The *Davis* court implicitly recognized the principle that the power to regulate a business or occupation does not necessarily include the power to exclude persons from engaging in it. See *State v. Harris, supra,* and cases cited at 6 S.E.2d 863. That court also observed that, " . . . public accountancy *now* embraces many intricate and technical matters dealing with the many kinds of tax laws, unfair trade practices, rate regulations, Blue Sky laws, Stock Exchange regulations, reports required by various governmental agencies, financial statements, etc." 307 S.W.2d at 802. As indicated above, I am of the opinion that land surveying requires essentially the same knowledge and skills today that prevailed at the time George Washington pursued it as an occupation. If modern conditions have wrought changes in the occupation they are not so commonly known and universally accepted that we can judicially notice them.

The majority opinion of the Court says that we judicially note that a substantial amount of litigation has been engendered in the past because of inaccurate and improper surveys and that we continue to receive regular disputes over boundaries, plats and surveys. Pretermitting any discussion of the propriety of judicially noting the number of a particular kind of case I simply disagree that the number of boundary disputes that were originally generated or at any point involve inaccurate surveys are substantial in number. Substantial is a relative term and in my opinion lawsuits of the subject category in the State of Tennessee are insignificant in number. But, I submit that no legal authority exists for the

Legislative exercise of the police power here involved because of the number of lawsuits or the amount of money involved therein. Litigation arises out of the pursuit of all of the common occupations.

The majority opinion points to the failure of plaintiff to adduce proof in support of his assertion that land surveying is such a common pursuit as to be beyond the police power of the Legislature to regulate. Given the history of land surveying as a common occupation, the fact that it has been pursued without regulation in Tennessee for one hundred seventy-one (171) years, that the Supreme Court of Illinois and the Supreme Court of Tennessee had classified the calling a common occupation, it is my view that the burden was upon the Board to go forward with the evidence to justify Legislative exercise of the police power in prohibiting anyone from following this prima facie common occupation. I think it is fair to say that both parties were remiss in not adducing proof in support of their respective contentions. The constitutional issue presented in this case is not a pure question of law but one of mixed law and fact and the controlling facts are not of a character that this Court may take judicial notice thereof.

I do not question the power of the Legislature to enact T.C.A. § 64–2418 or to regulate the practice of land surveying to the extent that only those who meet the qualifications of the Act and are certified by the Board may hold themselves out to the public as certified land surveyors. But, in my opinion the exclusion of persons not so certified from engaging in land surveying performed pursuant to private contract involving boundaries of privately owned land, as distinguished from publicly owned land, exceeds the constitutional exercise of its police power. It seems to me that the only aspect of the statutes that is or may be of benefit to the public is the requirement that any recorded map, plat or survey be prepared by a registered land surveyor or a registered engineer. Having accomplished that purpose it was unnecessary to prohibit the

pursuit of the occupation in the private sector.

I am not persuaded that sufficient danger to the public health, safety or welfare inheres in the pursuit of land surveying to justify prohibiting persons not board certified from engaging in that occupation, in the private sector. Such regulatory power must be cautiously and sparingly exercised because of the inalienable right of a citizen to earn a living in one of the ordinary occupations of life. The fact that its incompetent performance under contract with private parties may result in controversies or litigation over property lines, can hardly be said to significantly involve the public welfare. The practice of land surveying in the act under consideration reaches all who perform or engage therein by private contract as well as those who hold themselves out to the general public as certified and registered with the State Board. That prohibition, in my opinion is an unwarranted limitation on the right of private contract and an unconstitutional invasion of the right of an individual to earn a living in an ordinary calling.