PROSTERMAN *v.* TENNESSEE STATE BOARD OF DENTAL EXAMINERS *et al.*

(*Nashville*, December Term, 1933.)

Opinion filed July 17, 1934.

HARRY J. SCHAEFFER and FRANK S. CARDEN, both of Chattanooga, for appellants.

SCOTT FITZHUGH and HENRY M. CRYMES, both of Memphis, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Conceiving that Dr. Prosterman, a dentist practicing at Chattanooga, had been guilty of conduct violative of provisions of the act creating a state dental board, carried into the Code of 1932 as section, 6941 et seq., notice was served on him to appear and answer why his license should not be revoked. He responded in person and by counsel, and, after a full hearing, was found guilty of several offenses under the statute, and his license was revoked. Thereafter, he brought this suit by bill in chancery to have this order of the board reviewed and set aside. The chancellor heard the cause on the transcript of the evidence before the board, and some additional proof by depositions, and, sustaining certain material and determinative findings of fact of the board, affirmed the order, with a modification of the suspension to thirty days.

Both sides have appealed, Dr. Prosterman insisting that his license should not be suspended at all, and the board that its action should have been affirmed by the chancellor without modification. The learned and lamented chancellor, W. B. Garvin, handed down a careful and exhaustive opinion passing on all phases of the case, to which reference is made for a fuller discussion of the facts than by reason thereof we deem it necessary to embrace herein.

Before the board the following charges, in substance, were considered and sustained: (1) That Dr. Prosterman falsely advertised that he had had twenty years' experience in all lines or branches of dentistry; (2) that he sent out notices stating that he had been formerly a

professor and dean of the Southern Dental Institute of Atlanta, where he gave post graduate instruction; (3) that he falsely advertised that he had successfully fitted plates and satisfied patients where others had failed; and (4) that he falsely advertised his "hecolite plates" as "genuine and unbreakable."

The chancellor held with Dr. Prosterman respecting the third and fourth of the foregoing specifications, and these matters are eliminated. However, he sustained the findings and action of the board touching specifications 1 and 2. He found with the board that the statement advertising that he had had "twenty years experience in all branches of dentistry" was untrue, and it appears from the admissions of Dr. Prosterman himself that this statement was untrue. He had been a practitioner for only half that time. Prior to that time his experience was confined to work as a helper in laboratory work. As pointed out by the chancellor, this in no sense constituted or afforded experience in all branches of dentistry. Indeed, Dr. Prosterman himself later published a correction to the effect that ten years, rather than twenty, was the true period of his experience. We are not able to find that the board and the chancellor were unjustified in holding this to have been a material and reprehensible misrepresentation, calculated to mislead and deceive.

Also, with respect to the second specification, while more open to dispute and difference of opinion, we are constrained to agree with the board and chancellor that the representation made to sought-after patrons, that he was a "Dentist formerly Professor and Dean Southern Dental Institute, Atlanta, Georgia," was misleading. He seeks to justify this statement by tes-

timony that he had at one time organized a concern by this name, in Atlanta, which he operated a short time in connection with his dental office there, but the organization was little more than a name, high-sounding, but unsubstantial, and our conclusion rests largely on his specific admission. He is asked: "So this was in the same space that you were using as your office. Did you have any instructors in there?" A. "I did not have anybody but myself." Q. "You were the only one?" A. "Yes, sir." We think it too plain for argument that such a situation did not justify his holding himself out later, when even this temporary makeshift had passed out, as "formerly Professor and Dean Southern Dental Institute." "Professor" of an "institute" implies a position of importance and recognition by others of capacity. And the term "Dean" clearly suggests an office of responsibility, and definitely denotes a group situation. It is a misleading misnomer if applied to a situation wherein but one person is engaged, acting for and directing only his own individual activities. Such circularization for the purpose of inducing patronage for an institute, college, or school would be naturally deceiving, and this is equally true of circularization of proposed patrons of his dental office.

The chancellor, as before stated, modified the order of the board suspending the license of the dentist altogether, so as to limit the suspension to thirty days. It is of this modification that the board complains. It is said that, having found that the charges were sustained by the evidence, the chancellor should have dismissed the bill and affirmed the order; that he exceeded his authority in decreeing this modification.

Counsel concede "that prior to the date that the Code of 1932 became effective, the complainant would have been entitled to a trial de novo upon a writ of certiorari of the Circuit Court," but the argument is that, by implication, the new Code provisions, sections 9008-9018, exclude a trial de novo, but contemplate only a review of the record before the Board to determine whether the "order or judgment is erroneous." This court has recently considered these sections in response to the insistence that they enlarged the right of review by *certiorari* of the rulings of boards and commissions. See *Anderson et al.* v. *Memphis*, 167 Tenn., 648, 72 S. W. (2d), 1059, but the contention that such rights are restricted thereby is made for the first time. We quote from the brief of counsel:

"These new statutory provisions have injected new features into the law concerning judicial supervision over the acts of inferior boards. In the first place the act provides that the petition for *certiorari* shall state the issues involved in the cause, 'the substance of the order or judgment complained of,' of the respects in which the petitioner claims the order or judgment is erroneous, and praying for an accordant review.' This language of the statute clearly indicates that the Legislature contemplated not a trial *de novo*, but a review of the record before the board to determine whether the 'order or judgment is erroneous.' It would seem that the statute places upon the complainant the burden of showing that the judgment is erroneous and that, until such is shown, the order is presumed to be a proper one.

"This view of the act is strengthened by an examination of section 9012, Code 1932, which provides that the board or commission shall cause to be made, certified

and forwarded to the Court a complete transcript of the proceedings in the cause, containing also all the proof submitted before the board or commission. The circumstance that the Court reviews the same testimony that was adduced before the board indicates that the lawmakers did not contemplate a trial *de novo*."

To this we cannot agree. Certainly, since *Staples* v. *Brown*, 113 Tenn., 639, 85 S. W., 254, the right to a trial *de novo* under the statutory writ has been settled, unless, as in *Nashville* v. *Martin*, 156 Tenn., 443, 3 S. W. (2d), 164, the Legislature has seen fit to restrict the right of appeal, which it may do in some classes of cases. We find nothing in the sections referred to, under which this proceeding appears to have been brought and tried, without jurisdictional challenge, to limit the power of the chancellor to pass on the facts and modify the order under review.

Appellant Prosterman not only insists that the chancellor was in error in sustaining the charges, but he challenges the validity of the act under which the board exercises its jurisdiction, as in violation of article 1, section 17, article 6, section 11, article 2, section 8, and article 1, section 8, of the Constitution. As we understand the assignment the specific complaint is that by Code, section 6943, the group from which the Governor may appoint members of the board of examiners is limited to such dentists as shall be recommended for appointment by the state dental association; the argument being that this association is exclusive in character, excluding all advertising dentists, prejudiced, etc. While the practice of the dental calling is a property right, we do not understand that this is true of membership on the state dental, or other appointive board. The right of

every qualified dentist to practice his calling, provided he does so within the law, is safeguarded by law, and the courts are open to all for relief in case the board of examiners appointed by the Governor acts arbitrarily or illegally. We find no constitutional difficulty with this act.

Counsel complain of the statement incidentally made by the chancellor that: "Weight is to be given to the decision of the Board, and the burden may properly be said to be cast upon the petitioner to show that the decision is erroneous."

Conceding, although not deciding, that this statement is subject to objection, we think it wholly immaterial, since, as before indicated, the findings of the chancellor were so emphatic and so clearly supported by the record. His view of the rule as to the burden of proof could be material only if the evidence was in doubt.

On the whole case, we find no error, and the decree must be affirmed.