STATE, Respondent, vs. HELWIG, Appellant.

*September 19—October 7, 1952.*

The cause was submitted for the appellant on the briefs of *Cavanagh, Mittelstaed, Sheldon & Heide* of Kenosha, and for the respondent on the brief of the *Attorney General* and *Stewart G. Honeck,* deputy attorney general.

BROADFOOT, J.   At all the times material to this case the defendant was a resident of Kenosha county, where he was employed by the Nash-Kelvinator Corporation. Nash Northside, Inc., was an Illinois corporation having its principal place of business in Chicago. It was not licensed to do business in Wisconsin as a foreign corporation or as a motor vehicle dealer, distributor, or salesman. The defendant called on two motor vehicle dealers in Kenosha at various times to give information about automobiles offered for sale by Nash Northside, Inc. It is undisputed that he sold approximately a dozen automobiles belonging to the Chicago company to two dealers at Kenosha. At times the dealers took delivery of cars at Chicago, but several of them, at least, were delivered at Kenosha by Helwig. Checks in payment therefor were issued to Nash Northside, Inc., and some of them were delivered to the defendant, although some may have been mailed direct to the company at Chicago. In one instance the defendant sold a car to a fellow employee. This car had been sold by Nash-Kelvinator Corporation to Nash Northside, Inc., and delivered to a carrier for transportation to Chicago. On the order of Nash Northside, Inc., this car was released by the carrier to the purchaser at Kenosha. The record also shows that he sold an automobile registered in his own name to one of the dealers. The check was made payable to defendant but was indorsed by him to Nash Northside, Inc.

The defendant now contends that the statute, which it is claimed he violated, does not purport to cover persons engaged in interstate commerce, and that if it does, then it is void for the reason that it would place an undue burden upon interstate commerce.

Sec. 218.01 (1) (a), Stats., reads as follows:

" 'Motor vehicle dealer' means any person, firm, or corporation, not excluded by paragraph (b) of this subsection who:
"1. For commission, money, or other thing of value, sells, exchanges, buys, or rents, or offers or attempts to negotiate a sale or exchange of an interest in motor vehicles; or,
"2. Who is engaged wholly or in part in the business of selling motor vehicles, including motor-driven cycles, whether or not such motor vehicles are owned by such person, firm, or corporation."

Other subsections of said chapter provide for the issuance of licenses for motor vehicle dealers and salesmen by the state motor vehicle department. The statute by its terms makes no distinctions between interstate and intrastate transactions. It is broad in scope and is designed to cover the activities of persons within this state. The defendant clearly violated the terms of the statute by selling and negotiating for the sale of motor vehicles at Kenosha to Kenosha residents. He took orders in Wisconsin, cars were delivered by him in Wisconsin, they were sold for money, and checks were issued to him in Wisconsin. The statute was designed to protect Wisconsin buyers of motor vehicles from fraud, and it is a proper exercise of the police power of the state.

The principal argument of the defendant is that the statute, as applied to the facts in this case, imposes an undue burden on interstate commerce and therefore the statute is unconstitutional. It is admitted that most of the transactions involved interstate commerce. Many cases involving this question have been tried and decided in federal courts as

well as our own. These cases show that the state may adopt proper regulations in the interests of the peace, safety, and welfare of its residents in the absence of a federal statute either dealing with or pre-empting the field, or unless the state regulation discriminates against persons engaged in interstate commerce or places an undue burden thereon. *Kenosha Motor Coach Lines v. Public Service Comm.* 254 Wis. 509, 37 N. W. (2d) 78; *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 279 N. W. 673; *Simpson v. Shepard* (Minnesota Rate Cases), 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511; *Mintz v. Baldwin,* 289 U. S. 346, 53 Sup. Ct. 611, 77 L. Ed. 1245; *Kelly v. Washington,* 302 U. S. 1, 58 Sup. Ct. 87, 82 L. Ed. 3; *California v. Thompson,* 313 U. S. 109, 61 Sup. Ct. 930, 85 L. Ed. 1219.

Our attention has not been called to any act of congress which undertakes to regulate the acts for which the defendant was convicted. We know of no federal legislation dealing with or pre-empting the particular field of interstate commerce that is involved here. The statute provides for a license fee of $10. It applies alike to residents and nonresidents who choose to operate within our state. It is apparent that the amount of the license cannot do more than pay for the cost of administration and that it is not a revenue measure. It does not apply to nonresidents only, nor does it discriminate against nonresidents.

Thus, the statute does not place an undue burden upon, nor does it discriminate against interstate commerce.

*By the Court.*—Judgment affirmed.