Ford Motor Company

*v.*

Chester R. Pace, etc., et al.

(*Nashville,* December Term, 1959.)

Opinion filed March 11, 1960.

Rehearing denied May 4, 1960.

562

JAMES M. SWIGGART, Assistant Attorney General, HOOKER, KEEBLE, DODSON & HARRIS, Nashville, for appellants.

ALLISON B. HUMPHREYS, Solicitor General, for George G. McCanless, Attorney General, appellant.

CECIL SIMS, Nashville, for appellee, Ford Motor Co.

EDWIN F. HUNT, of HOWARD, DAVIS, BOULT & HUNT, Nashville, for General Motors, amicus curiae.

J. E. McCADDEN and WALTER P. ARMSTRONG, JR., of ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, for Chrysler Corp., amicus curiae.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The original bill in this cause was filed by the Ford Motor Company seeking declaratory judgment as to the validity of Chapter 79 of the Public Acts of 1955 (now codified as Sections 59-1701 through 59-1720, as this Chapter was amended by subsequent Acts), and if valid, construction of the Act. We take jurisdiction only on the proposition that the constitutionality of the statute "is the sole determinative question in the litigation". (Sec. 16-408, T.C.A.). If this were not true, the jurisdiction of the case would be in the Court of Appeals.

The chancellor in a memorandum opinion, which is made a part of the record, held that the Act as a whole and each particular part thereof was unconstitutional. From this holding an appeal was seasonably perfected and six of the most able briefs, it has been the writer's pleasure to read, have been filed setting forth the questions to be determined on one side or the other. We have read and re-read the statute as it is codified, supra, the various briefs and all authorities cited therein as well as making some independent investigation on our own part. After spending many days at this work we have now reached our conclusions and will hereinafter attempt to put them on paper.

The basic argument is that the Act is an invalid exercise of the police power of the State, in that this Motor Vehicle Act serves no public purpose, that such regulations as it provides do not promote the health, safety, moral or general welfare of the public, and consequently it is inimical to the due process clauses of Article 1, Section 8 of the Tennessee Constitution, and the 14th Amendment to the Constitution of the United States. The basic case around which this argument hinges, and upon which one of the briefs is pitched entirely, is our recent opinion of *Livesay v. Tennessee Board of Examiners in Watchmaking*, 204 Tenn. 500, 322 S.W.2d 209.

In considering the question, whether or not the Legislature has the right to enact such a statute under the police power, we must take into consideration and look at things in the light of the social and economic conditions existing at the present time rather than at the time our Constitution was adopted. Legislative power is not static and helpless but arises to adjust and face new conditions as they appear to affect the people of the State. Of course, the Legislature of the State cannot prohibit an ordinary business but it may, however, regulate the business to promote the health, safety, morals or general welfare of the public. The guarantees of the Constitution imply the absence of arbitrary restraint, but not immunity from reasonable regulations and prohibitions imposed in the interest of the people of the State.

Aside from the record herein we must take judicial knowledge of the tremendous growth of the automobile vehicular industry in the State. All other industries employing any number of people have had to create huge parking lots for the people to park their cars who come

to work. The highways are crowded. The State and Nation are building more, and broader and larger, highways to care for this motor vehicular traffic. The papers and radio are constantly warning people and trying to educate them as to careful driving because of the many, many accidents and deaths that occur by reason of negligence or faulty cars or whatnot. Thus it is, knowing these facts, when we consider the matter in this light, we think that the statement of the Supreme Court of Nebraska in *Nelsen v. Tilley*, 1939, 137 Neb. 327, 289 N.W. 388, 392, 126 A.L.R. 729, 734, is very appropriate under the discussion now being had. That court said:

"Motor vehicles, once luxuries, are now necessities. The handling of motor vehicles has become a complex business. The sale of new automobiles is closely tied in with the purchase, trade and sale of used cars. The possibilities of fraud upon the public have correspondingly increased. The elimination of harmful trade practices and dishonest dealings resulting in injury to the purchasing public may have been, and undoubtedly was, a factor in the passage of the act. Many courts have sustained similar legislative enactments."

A fortiori this statement is true today.

From our investigation we have been unable to find any case which holds that it is not within the police power of the State to enact such legislation as that referred to in the quotation last above. See 46 Am.Jur., page 200, Section 5, Sales.

The Court of Appeals in Ohio in *Ohio Motor Vehicle Dealers, etc. v. Memphis Auto Sales,* 103 Ohio App. 347, 142 N.E.2d 268, 275, had this to say: "True the sale of motor vehicles is affected by public interest and laws

regulating their sale generally are salutary." And further: "Certainly the legislature has the power to determine that the conduct of an agency engaged in the sale of new motor vehicles is a business affected by the public interest. This fact has been recognized by legislatures and courts throughout the country." Another case holding to this same view is *Rebsamen Motor Co. v. Phillips,* 1956, 226 Ark. 146, 289 S.W.2d 170, 57 A.L.R.2d 1256. We in this State long ago established the legal principle which is followed in most cases that when the Legislature has enacted a statute, which is apparently for the protection of the public safety, or the public health or the public morals of the people, that the Court will not encroach upon this Act or the right of the Legislature. This Court said in *Petition of Carter,* 188 Tenn. 677, 222 S. W.2d 11, 12, 13:

"* * * Furthermore we are not concerned in determining the constitutionality of an Act 'whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the Legislature.' *Motlow v. State,* 125 Tenn. 547, 589, 145 S.W. 177, 188, L.R.A. 1916 F, 177."

We, too, have said that "Public Policy is the present concept of public welfare or general good. The police power is the attribute of sovereignty by which the public policy is preserved and promoted." *State ex rel Loser v. National Optical Stores Co.,* 189 Tenn. 433, 225 S.W.2d 263, 269. Thus it is, from what has been said above, we can readily see how the Legislature had it in mind that legislation as that herein, which will hereinafter be more specifically referred to, was well within its

police power. It is not at all unreasonable for us to believe that the Legislature had the purpose in mind in enacting this legislation to protect the public safety, health, and/or public morals of its people. When we thus have determined that the legislation is reasonable, certainly under the Section of our Constitution hereinbefore referred to and the 14th Amendment to the United States Constitution, this legislation is not unconstitutional merely because it is attempting to regulate the motor vehicle or automobile industry, its dealers, salesmen, etc.

The Act in question does not involve watch repairers or makers, house painters, paper hangers, land surveyors, morticians, dancing schools, horse shoers, dry cleaners, layers of drain tile and things of that kind, which have been correctly held beyond the police power of the Legislature for the very apt and fine reasons as set forth in the Livesay case, supra. The question before us though involves the classification of the entire automobile industry, an industry constituting one of the largest segments of our economy. This within itself gives some possible reason for the classification and the action of the Legislature in adopting and enacting this police statute. *Phillips v. State*, 202 Tenn. 402, 304 S.W.2d 614, which was prepared for this Court by Mr. Justice Tomlinson, who also wrote the very excellent opinion in the Livesay case.

■ It makes no difference what our personal views may be as to the necessity of such legislation as that herein, the fact remains that the Legislature of the State concluded that a reasonable basis existed for its enactment, and, there being some foundation in fact to justify this legislative action, the Court is powerless and it

wouldn't be right on our part for us to substitute our judgment for that of the Legislature even if we cared to do so. Thus having concluded that the Legislature had the authority under the police power to regulate the purchase and sale of motor vehicles for the protection and general welfare of the public, we now come to consider various Sections of the Act and attacks made thereon.

Our reference to the Act in question is to the Act as codified in Sections 59-1701 through 59-1720, Cumulative Supplement to T.C.A.

The first section is a declaration of legislative intent, it being necessary for the public welfare etc., the Legislature under its police power passed this Act to regulate and license motor vehicles, dealers, salesmen, etc. The next section defines the principal terms used in the Act and then follows the creation of the Tennessee Motor Vehicle Commission, which was composed of one member from each of the nine Congressional Districts, plus a Chairman selected from the State at large, all selected and appointed by the Governor from a list furnished by the Tennessee Automotive Association. The Act provides for the qualifications, terms, etc., for these members, their oaths and that the Commission would have an Executive Secretary; also invests the Commission with the power to carry out the purposes of the Act and adopt rules for the same.

The clear intent of the Act is that any person, firm, etc. engaging in the business of manufacturing, distributing, or selling motor vehicles had to be licensed by the Commission, and a latter Section in the Act provides that it is a misdemeanor if anyone attempts to do any one of

these things regulated under the Act without first being licensed.

The fees provided are very reasonable: for the distributor one hundred ($100) dollars; for a motor vehicle dealer twenty-five ($25) dollars; for a used car dealer twenty-five ($25) dollars; for a factory representative fifteen ($15) dollars; and for a salesman only three ($3) dollars. Then, of course, there are provisions in the Act penalizing those who do not comply by increasing this.

Section 59-1713, T.C.A., has been in for considerable discussion in the briefs of the appellees. This Section requires that these different people who are licensed and regulated by the Act must specify the location of their business, and, if they change this location, they must notify the Commission, and, if they change to another county, they shall acquire a new license. This Section is obviously a proper regulation, because it is the only way the Commission can keep up with the different parties' licenses.

The controversial Section of the Act as a whole is the following, 59-1714, T.C.A. Under this Section of the Act the Commission is vested with authority to deny application or to revoke or suspend a license for various and sundry reasons as set forth in the Act. Briefly and in summary, these grounds are: unfitness of the applicant, fraud or material misstatement in the application for a license; failure to comply with the Act, and rules and regulations adopted thereunder; flagrant violation of the rules; requiring as a condition of purchase the purchase of special equipment; selling as a new vehicle one which is in fact used; selling as a new vehicle one for

which a new car warranty cannot be secured without explaining the fact; having no established place of business; resorting to false or misleading advertising; coercing dealers to accept motor vehicles or parts or accessories not voluntarily ordered, or coercing dealers to order and accept delivery of vehicles with special features not included in the manufacturers list price, or coercing dealers to buy parts etc., only from the manufacturer; refusing to deliver vehicles within sixty (60) days after the dealers order has been received, where the same has been advertised for immediate delivery; inducing or coercing agreements between manufacturers and dealers by threat of cancellation of franchises; unfairly canceling franchises; forcing methods of delivery of new vehicles; and entering into agreements with dealers who do not have proper servicing facilities.

The Act provides for a hearing by the Commission through its hearing officer with review of the findings of the hearing officer by the Commission, and for a judicial review of the findings of the Commission as provided for other legislative boards under the general law.

▮ In addition to the grounds set forth in the outset of this opinion that the Legislature lacked any reason to enact the Act under its police powers and the Sections of the Constitution therein referred to, the appellees attack the Act on the ground that it violates Article 1, Section 22, and Article 11, Section 8 of our Constitution, in that it is class legislation and designed to create a monopoly. In *Nelsen v. Tilley,* supra, the Supreme Court of Nebraska struck down the Act there because they were of the opinion that it created a monopoly in persons enfranchised by the manufacturer of motor vehicles. It

was said that the selling of new cars would be monopo-
lized by dealers enfranchised by the manufacturers in
that the Act was attempting to prohibit citizens from
engaging in the business which was free to everybody
when it attempted to limit is to one class of people. The
Act here in question is not so worded, or does not have
this meaning. The Act under consideration covers all
dealers, distributors, salesmen, etc., selling new and
used automobiles, and it does not attempt to confine its
regulatory powers to any one group. This being true, it
is not violative of the constitutional provisions or any
other that we know of. *Spoone v. Mayor & Aldermen of
Town of Morristown,* 185 Tenn. 454, 461, 206 S.W.2d 422.

The same reasoning, above, applies to the attack
on the Act in that it constitutes a burden on interstate
commerce. The Act applies to all alike, whether they are
out of the State or in the State, so long as they are doing
business here, and, this being true, it is not a burden on
interstate commerce. See *State v. Helwig,* 262 Wis. 299,
54 N.W.2d 907, 908, where cases from many jurisdictions,
including that of the Supreme Court of the United States,
support this statement.

It is argued very forcibly that the Act is so
vague in its terms that it violates procedural due process.
The Act creates the Motor Vehicle Commission and
defines the policy and those actions which offend that
policy. This act vests in this Commission the authority
to carry out the administration of that policy. The words
of the statute are to be taken in their natural and ordi-
nary meaning. *Moto-Pep, Inc. v. McGoldrick,* 202 Tenn.
119, 303 S.W.2d 326. And, of course, to those words
which are attacked, we must ascribe the meaning to be
ascertained and determined from the context of the Act

so as to give them the purpose which was the intention expressed in the Act.

A great many other states have enacted laws very similar to the Act here under question. Some of these laws have been on the statute books of other states for many years, and many of them are indeed very similar to that here under attack and some are identical. The States of Wisconsin, Colorado, Virginia, Florida, Oklahoma, South Dakota, Michigan, Ohio, Mississippi and Arkansas have related Acts. The Arkansas Act (Acts 1955, No. 182) was stricken down in *Rebsamen Motor Co. v. Phillips,* supra, because the statute franchised dealers in new and unused motor vehicles and their salesmen while the unfranchised competitors dealing in new and unused cars were not regulated. Obviously, the Act was unconstitutional for that reason, but that has no application to the Act here in question because it deals with all alike.

The Wisconsin statute (W.S.A. 218.01) was upheld in the case of *Kuhl Motor Co. v. Ford Motor Co.,* 270 Wis. 488, 71 N.W.2d 420, 55 A.L.R.2d 467. The appellees attempt to minimize the holding in this Wisconsin case herein, because what was the majority opinion in the first instance turned out on petition to rehear to be the minority opinion, and the dissenting opinion in the first instance was the majority opinion. The dissenting opinion upholds the provisions of the Act in general and legislation of this kind. This case likewise upheld the proposition that it was well within the legislative prerogative, under their police powers (their provisions of the Constitution being almost identical with ours), to enact such legislation. Even the dissent does not question this fact. It questions primarily certain provisions of the Act

which it is said, in the dissent, would not give the Ford Motor Company rights under the due process laws.

Louisiana has an Act very similar to that here under discussion. (LSA-R.S. 32:1251 et seq.) This Act was upheld by the court of last resort of Louisiana in *Louisiana Motor Vehicle Commission v. Wheeling Frenchman, et al.,* which is the latest case decided on the subject, May, 1958, and it is reported in 235 La. 332, 103 So.2d 464, 469. Among other things the court observed in that opinion ''that the production, transportation and marketing of automobiles is unquestionably a proper subject for regulation by the Legislature under its police power.''

The related acts have been upheld in at least two other cases, that of *Willys Motors, Inc. v. Northwest Kaiser-Willys, Inc.,* D.C.Minn., 142 F.Supp. 469, M.S.A. sec. 168.27, and *Buggs v. Ford Motor Co.,* 7 Cir., 113 F.2d 618 (W.S.A. 218.01); while the Colorado Act (C.R.S. '53, 13-11-1 et seq.) has been held unconstitutional by a three judge Federal Court in the case of *General Motors Corp. v. Blevins,* D.C.Colo., 144 F.Supp. 381.

In the last case cited, the Blevins case, the Court therein made a number of relatively diverse holdings about different things. The case was decided by the United States Court without the benefit of having the court of last resort of Colorado pass on the constitutionality of the State Act. Apparently the case, as far as General Motors was concerned, was not met with much opposition. The opinion in this case makes reference to other cases cited to the contrary merely by brushing them off by stating that other facts were involved in those cases. The opinion did not attempt to distinguish them otherwise. As far as we are concerned, this opinion

obviously does not have the persuasive power the case from Louisiana and other cases, we have referred to, do have in our consideration of the question here involved.

Much argument is contained in the various briefs, supporting the position of the appellee, that the language of the Act violates due process because of vagueness and uncertainty of its terms. In discussing this question the briefs argue that the Act does not provide or furnish any ascertainable standards upon which the Commission would act, and criticize the terms ''the act of coercing'', ''threatening to cancel any franchise'', ''as unfairly'', ''without due regard to the equities of said dealer'', and ''without just provocation'', and such statements as are in Section 59-1714. We have carefully, as we have said before, read and re-read some two or three times the specific provisions of this Act and it seems to us that the application of these terms objected to can be fairly administered by the Commission in applying the ordinary meaning of such terms to them. The authors of 50 Am. Jur., page 489, make this statement:

''* * * A statute is not necessarily void merely because it is vague, indefinitely, or uncertain, or contains terms not susceptible of exact meaning, or is stated in general terms, or prescribes a general course of conduct, or does not prescribe boundaries, or is imperfect in its details, or contains errors or omissions, or because the intention of the legislature might have been expressed in plainer terms, and questions may arise as to its applicability, and opinions may differ in respect of what falls within its terms, or because the statute is difficult to execute.''

Of course, to this statement there are numerous respectable authorities cited from various jurisdictions in the country.

A rather vicious attack is made upon the Section of the Act (59-1703) which makes the Commission consist solely of dealers who are selected by the Governor from a list submitted by the Tennessee Automotive Association. The argument is, and, at least one of the briefs makes abrupt apologies to the present members of the Board for making this attack as not reflecting on them particularly, that by the very nature of a Board thus made up, the Board is biased and partial. It is said such a nonjudicial body which exercises at least quasi-judicial functions should not be allowed. We think the attack on this Section of the Act is entirely unjustified. As far as we know, our investigation certainly shows that practically all the regulatory boards which cover most everything today in the State are made up of members of the profession which that board governs. The reason for this is perfectly obvious.

The Act now being questioned, to our minds, is closely related to the regulatory act regulating real estate agents and salesmen. They have a board which regulates, licenses, etc., as this one does, made up of people with knowledge of their profession. This Court in *Prosterman v. Tennessee State Board of Dental Examiners,* 168 Tenn. 16, 73 S.W.2d 687, held that identical provisions as to the dentists being members of these boards (Code 1932, sec. 6941 et seq.), as the automobile people are here, was not violative of Article 1, Section 8 of our Constitution, that no man shall be seized or deprived of property but by judgment of his peers, etc.; that the statute likewise did not violate Article 1, Section 17 of the Constitu-

tion in that the courts should be open to every person injured; and that it did not violate Article 6, Section 11 of our Constitution, providing that no judge should preside over a trial or a cause or event in which he may be interested. The same reasoning applies to this board as applied in the Prosterman case. We could extend the reasons at length but we think they are obvious and it is not necessary to do so.

 It is assigned as error and argued at length that the Legislature has conferred upon this board legislative power which of course it cannot do. We do not think so. The Legislature here has conferred upon this agency the right to enforce and administer this particular statute, and the statute in effect gives direction to such agency so that it may carry out the purpose of the Legislature as shown by the Act. This Court in *Large v. City of Elizabethton*, 185 Tenn. 156, 203 S.W.2d 907, pointed out that the Legislature may confer jurisdiction upon a board in the administration of a statute, which the Legislature enacts and vests in that board the power and authority to adjudicate all matters arising under the statute. There is nothing unconstitutional or wrong in what was done in this particular case. It has long been settled in this State that under the police power the Legislature may extend to these boards or commissions the right to administer regulatory laws. This Court long before any of the present members were on it in *Rushing v. Tennessee Crime Commission*, 173 Tenn. 308, 117 S. W.2d 4, 7, said this:

"No restraint is imposed by the Constitution upon the power of the Legislature to create boards and commissions as the instrumentalities of government nor is there any restraint upon the power to provide means

through which such boards and commissions may accomplish the purpose for which they are created.''

 It is argued very ably on appellee's side of this lawsuit that there is no procedure provided in the statute for hearings. The statute provides that there may be a hearing officer and, then without saying how it gets to the board, the statute says what the board may do about it. It is argued, of course, that there is no connection between the two and that there is no way provided to get the matter from the hearing officer to the board. The hearing officer makes up the record and passes it to the commission with his recommendation. The statute, of course, does not have to say in so many words that there will be exceptions. This follows as a matter of course.

It is argued in behalf of the appellees that there is no procedure provided for a hearing provided a license is not granted or taken away or whatnot herein. The Act provides for a hearing officer who may hear these things and make certain findings and conclusions thereon. The Act does not in so many words say how then it gets from the hearing officer to the commission, but it does provide that the commission may hear this and what they shall do, etc. The leaving out of these things in the Act does not void the Act, because it must be assumed that if there are any exceptions to the hearing officer's findings then it is on these exceptions that the commission will act. Clearly the whole import of the Act is that this is true. There can be no other conclusion from it. In *Richardson v. Reese,* 165 Tenn. 661, 57 S.W.2d 797, this Court held that the mere naked provision for a hearing implies a hearing with all requirements of due process of law. The Act provides that after the commission has acted this

decision of the commission is subject to review by the Circuit Court of Davidson County (under Section 27-901 et seq., T.C.A.). In other words, the same Section as is applicable to other regulatory boards. Such an Act is not unconstitutional when it does allow the matter to be heard, findings made, etc., and then to be heard in court. This is true, that is, that there is nothing unconstitutional about it when an appeal to the court is provided. *Nelsen v. Tilley,* supra, and 46 Am.Jur., supra.

Much argument is leveled at the provision of the Act, which attempts under the State's police power in enacting the Act, to protect automobile dealers against unfair dealing on the part of automobile manufacturers. This Court in *Harbison v. Knoxville Iron Co.,* 103 Tenn. 421, 53 S.W. 955, 960, 56 L.R.A. 316, sixty years ago enunciated a principle of law (following other authorities) which is clearly applicable to the present Act. This is one of the best opinions we have read, ancient or modern, on the due process clause of the Federal Constitution and Article 1, Section 8 of our Constitution. Among other things, the Court in the Harbison case said:

"* * * The legislature, as it thought, found the employe at a disadvantage in this respect, and by this enactment undertook to place him and the employer more nearly upon an equality. This alone commends the act and entitles it to a place on the statute book as a valid police regulation."

Of course, the argument against the Act in the Harbison case is the same as the argument here, that it violated the right to contract as they pleased. This contention was answered to the contrary to those making the argument, and on the basis of the quotation last above the

Act and this particular part of it was affirmed. The Court quoted from *Holden v. Hardy,* 169 U.S. 366, 391, 18 S.Ct. 383, 42 L.Ed. 780, in answer to this argument, and this quotation is equally applicable today in the present suit.

This identical provision was approved in the Wisconsin case of *Kuhl Motor Co. v. Ford Motor Co.,* supra, and in the opinion that case quotes from *Ford Motor Co. v. United States,* 335 U.S. 303, 323, 69 S.Ct. 93, 103, 93 L.Ed. 24, among other things, this: "The dealers are thus economic dependents of the company whose cars they sell."

We are satisfied after reading the matter and studying it for days that there is no unconstitutionality in this provision.

Of course, as we said in the outset these things do not express our personal views, but as we see it, from our duty in interpreting an Act of the Legislature, giving them the legal rights and duties that are theirs as set forth in *Cosmopolitan Life Ins. Co. v. Northington,* 201 Tenn. 541, 300 S.W.2d 911, the Legislature has determined that these things are necessary. We think that they clearly come within the police power and are entirely different from situations treated of in the Livesay case, supra.

We do not intend to encroach upon the duties and prerogatives of the legislative branch, intentionally. There has been entirely too much of this in recent times. Our Constitution, Article 2, Section 2, provides that no persons belonging to one department shall exercise power properly belonging to the other; Article 2, Section 3 provides that the legislative authority is vested in the General Assembly. We to our utmost satisfaction have

determined, for reasons hereinabove, that the enactment here was in the legislative authority, under the police powers, and it is not arbitrary or capricious. Thus it is that we must sustain the legislation.

The last section of the Act contains a severability clause. In other words, if there is any section or sentence or clause or phrase or whatnot in the Act that is unconstitutional it is provided in this Section that such will not affect the validity of the remaining portions of the Act. Of course, the rule is, that when the Legislature so provides if a portion is constitutional and it can be separated from the other portions of the Act, and it further appears that the unconstitutional part did not constitute such an inducement to the passage of the other parts of the Act, and it would have been passed without it, then part of it may be rejected and part of it upheld.

We have concluded after very careful study that subdivision (2) of subsection (h) of Section 59-1714, T.C.A., is arbitrary and capricious and cannot be used for a ground for denial, suspension or revocation of license. We have likewise concluded that subsection (5) under (h) of the same Code Section is not a constitutional enactment. It does not in any way, as we see it, pertain to the economy, economic conditions of the parties or aid the welfare or whatnot in any particular. The first excluded subdivision, if carried to its logical conclusion, could merely be salesmanship. If in this clause the word "inducement" had been left out and had left merely the word "coercion" it would have had an entirely different meaning and might have been all right. Since inducement clearly means the art of selling, etc., we think that these two sections of the Act should be stricken. It is perfectly obvious that the Act is entire and a full act and the part

we have stricken does not affect the main purpose of the Act or any portion of it at all. Therefore, we uphold the constitutionality of the Act.

The result is that the decree of the Chancellor will be reversed and the cause remanded to that court for further proceedings. Accrued costs are adjudged against the appellee, Ford Motor Company.

PREWITT, CHIEF JUSTICE, not participating.

On Petition to Rehear

BURNETT, JUSTICE.

There has been presented to us a petition to rehear herein by the Ford Motor Company, which is in effect rather undignified and pedagogical. Regardless of this fact, we have given the petition very careful and thorough consideration.

The petition basically is filed because our decision "makes it imperative as a condition for review by the Supreme Court of the United States, for the Court to either act or refuse to act upon the validity of the legislation under the Constitution of the United States, both with reference to the previous insistence and contentions by your Petitioner * * *"

The insistences then made are that the Act is void because it is contrary to the Fourteenth Amendment of the United States Constitution; that as construed and applied by this Court it is void and contrary to the Constitution of the United States and more particularly to Article I, Section 10 of the Constitution of the United States, in that as we have construed the Act it constitutes a bill of attainder, is an ex post facto law, and a law

which impairs the obligations of contracts, entered into and existing prior to the passage of the legislation. We are unable to perceive these infirmities.

We in the original opinion have amply responded to the insistence that the Act is void because contrary to the Fourteenth Amendment of the United States Constitution. There are no new authorities cited, and the petition merely cites cases and refers to the original brief which we considered very thoroughly by reading at least twice.

The other insistence is that it violates Article I, Section 10, of the Constitution of the United States in that it "impairs the obligations of contracts and is an ex post facto law * * *" In *Willys Motors, Inc. v. Northwest Kaiser-Willys, Inc.,* cited in our original opinion, that court held that a Minnesota statute making it unlawful for any motor vehicle manufacturer to cancel the franchise of retail dealer without just cause was a valid exercise of the state police power and was not repugnant to Article I, Section 10, of the United States Constitution. That court cited in support of its holding *Manigault v. Springs,* 199 U.S. 473, 26 S.Ct. 127, 130, 50, L.Ed. 274, and a host of other cases. Insofar as it is applicable (we consider it an absolute answer to the question here made) the court has this to say:

"It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power,

which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people, and is paramount to any rights under contracts between individuals. Familiar instances of this are where parties enter into contracts, perfectly lawful at the time, to sell liquor, operate a brewery or distillery, or carry on a lottery, all of which are subject to impairment by a change of policy on the part of the state, prohibiting the establishment or continuance of such traffic; in other words, that parties, by entering into contracts, may not estop the legislature from enacting laws intended for the public good.''

In our original opinion for reasons which we think are valid, we held that the enactment of the statute herein was within the power of the Legislature under its police power to enact. We cited various cases in support of our holding. There were none so far as we could find, or have been cited by able counsel, holding that it is not within the police power of the Legislature to pass such legislation as this.

We have carefully considered the entire matter and for the reasons expressed must overrule the petition to rehear.