Perry A. CHAPDELAINE, Appellant,

v.

TENNESSEE STATE BOARD OF EX-
AMINERS FOR LAND SURVEYORS
et al., Appellees.

Supreme Court of Tennessee.

Aug. 23, 1976.

For Dissenting Opinion, see
543 S.W.2d 60.

Perry A. Chapdelaine, pro se.

R. A. Ashley, Jr., Atty. Gen., Nashville, C.
Hayes Cooney, Chief Deputy Atty. Gen.,
Nashville, for appellees.

## OPINION

HARBISON, Justice.

In this Court, the sole issue presented is
the constitutionality of Chapter 207 of the
Public Acts of 1969. This act creates the
Board of Examiners for Land Surveyors
and requires the licensure and annual regis-
tration of persons engaged in the business
of land surveying. The statute has now
been codified as T.C.A. §§ 62–1801 et seq.,
and as T.C.A. § 64–2418 (the latter requir-
ing the seal and signature of a registered
land surveyor or of a registered engineer
upon maps, plats, surveys or other docu-
ments "within the definition of land survey-
ing" in order to qualify for public recorda-
tion).

The principal thrust of the single assign-
ment of error made by appellant is that
land surveying is such a common occupation
or business as to fall outside the scope of

licensure or regulation by the State under its general police power. Great reliance is placed upon the decision of this Court in the case of *Livesay v. Tennessee Board of Examiners in Watchmaking*, 204 Tenn. 500, 322 S.W.2d 209 (1959). It is true that in that case this Court stated that the police power of the State is not without limitation, and that ordinary callings and business pursuits which do not affect the general welfare or involve the public morals, health or safety, may not be subjected to licensing requirements. See also *Campbell v. McIntyre*, 165 Tenn. 47, 52 S.W.2d 162 (1932), dealing with certain aspects of accounting.

In the later case of *Ford Motor Co. v. Pace*, 206 Tenn. 559, 335 S.W.2d 360 (1960), however, this Court upheld a statute regulating the business of distributing and selling motor vehicles, including provisions that automobile dealers and automobile salesmen be licensed. In the course of its opinion, the Court said:

"In considering the question, whether or not the Legislature has the right to enact such a statute under the police power, we must take into consideration and look at things in the light of the social and economic conditions existing at the present time rather than at the time our Constitution was adopted. Legislative power is not static and helpless but arises to adjust and face new conditions as they appear to affect the people of the State. Of course, the Legislature of the State cannot prohibit an ordinary business but it may, however, regulate the business to promote the health, safety, morals or general welfare of the public. The guarantees of the Constitution imply the absence of arbitrary restraint, but not immunity from reasonable regulations and prohibitions imposed in the interest of the people of the State." 206 Tenn. at 564, 335 S.W.2d at 362.

In enacting the statute now under consideration, the General Assembly stated:

"In order to safeguard the life, health or property of the public, the practice of land surveying in this state is hereby declared to be subject to regulation in the public interest." T.C.A. § 62–1801.

The activities sought to be regulated and subjected to licensure under the subject statutes are described as the "practice of land surveying", and defined as:

". . . the establishment or reestablishment of corners, boundaries, and locations of lots, parcels, tracts, or divisions of land, including distances, directions, and acreage, or fractional parts thereof: and also including but not limited to, the correct determination and description of the same for the purpose of furnishing a legal description of any land surveyed to be used in deeds or other instruments of conveyances for the purpose of conveying title to the area surveyed." T.C.A. § 62–1802(c).

The statute, by its terms, does not apply to "the practice of surveying for other purposes." *Ibid.*

It is true, as contended by appellant and as recognized in the cases cited above, that a legislative determination of the need for regulation is not conclusive upon the courts. Nevertheless, as stated by the Court in the *Ford Motor Co.* case, *supra*:

"It makes no difference what our personal views may be as to the necessity of such legislation as that herein, the fact remains that the Legislature of the State concluded that a reasonable basis existed for its enactment, and, there being some foundation in fact to justify this legislative action, the Court is powerless and it wouldn't be right on our part for us to substitute our judgment for that of the Legislature even if we cared to do so." 206 Tenn. at 567–568, 335 S.W.2d at 363.

In the present case appellant was offered an opportunity to introduce evidence in support of his contention that the practice of land surveying, as defined in the statute, is such a common pursuit or calling as to be beyond the police power of the legislature and of its power to require registration and licensure. Appellant offered no such proof, so that, purely from an evidentiary standpoint, he has failed to carry the burden of proof resting upon him to estab-

lish his factual assertions. In his brief, appellant insists that the practice of land surveying has remained unchanged since the days of George Washington, that it is an ancient art, and that it can be mastered simply by persons with little or no formal education or training. It is sufficient to state that appellant offered no testimony whatever in support of these assertions, and his claims are certainly not matters of such widespread and general knowledge that this Court can take judicial notice thereof. To the contrary, the Court judicially knows that a substantial amount of litigation has been engendered in the past because of inaccurate and improper surveys, and the Court continues to receive regularly disputes over boundaries, plats and surveys affecting very substantial property rights of the citizens of the state.[1] It seems to us that if the regulation of automobile dealers and automobile salesmen is within the police power of the state, then *a fortiori,* activities affecting the establishment of land corners and boundaries, and plats and subdivisions of real property, are also embraced within that power.

It is true that in the *Ford Motor Co.* case, *supra,* the Court used some unfortunate language in dictum. In sustaining the statutes regulating automobile sales and distribution, the Court said:

"The Act in question does not involve watch repairers or makers, house painters, paper hangers, *land surveyors,* morticians, dancing schools, horse shoers, dry cleaners, layers of drain tile and things of that kind, which have been correctly held beyond the police power of the Legislature for the very apt and fine reasons as set forth in the *Livesay* case, supra." 206 Tenn. at 567, 335 S.W.2d at 363. (emphasis added).

While appellant understandably seizes upon this dictum, we do not find it to be either persuasive or controlling here. The practice of land surveying which is here under consideration does not include every aspect or facet of the activities in which a surveyor might engage, but only that defined and set forth in the statute, and we are of the opinion that the legislative power does extend to the activities sought to be regulated by the present statute.

The State of Colorado, among many other states,[2] has detailed statutes requiring registration of land surveyors. Colo.Rev.Stats. §§ 12–25–202 et seq. (1973). The Supreme Court of that state, in commenting upon these statutes, said:

"Surveyors are licensed to protect the public from unqualified work. Section 12–25–202. The required seal certifies expertise. Section 12–25–209. It also acknowledges the surveyor's responsibility to protect the public for any mistake or negligence in the survey which bears the seal. Section 12–25–211." *South Park Land and Livestock Co., Inc. v. Hamilton Enterprises, Ltd.,* 538 P.2d 444, 445 (Colo. 1975).

Appellant originally applied to the Board of Examiners for Land Surveyors for a license, and at one point in these proceedings the Board was directed to afford him a hearing as to his qualifications. Appellant declined to accept this opportunity, however, and withdrew his application for a hearing. Accordingly, we do not find persuasive many of his arguments as to possible impropriety of conduct by the Board or its members, none of these things being demonstrated in evidence in the present case. Appellant has contented himself with a general attack upon the constitutionality of the statute, rather than proving the ac-

---

1. That rights of third parties, and not just the rights of the immediate contracting parties, may be affected by an inaccurate or improper survey, see *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970). For abuse by surveyors of their relationship to their own clients, see *McCarthy v. Holt,* 5 Tenn.App. 447 (1927).

2. Appellant relies heavily upon the case of *Doe v. Jones,* 327 Ill. 387, 158 N.E. 703 (1927), in which an Illinois licensing act for surveyors was stricken. Since 1939, however, legislation in that state has required licensure, apparently without challenge. Smith-Hurd Ill.Ann.Stats. ch. 133, §§ 34 et seq. (See Supp.1976 for current provisions).

tual practices followed by the Board in its examining and licensing procedures.

 Appellant argues that the statute in question contains arbitrary and impermissible classifications, in that it does not require licensure of registered engineers.[3] These persons are subject to examination and licensing under separate statutory provisions. T.C.A. §§ 62–201 et seq. Those statutes require registered engineers to meet more stringent educational qualifications than land surveyors. Also there is testimony in the record indicating that engineers are subject to high standards of professional ethics in addition to the statutory qualifications for licensing.

Appellant also contends that exemptions contained in the act for land surveyors employed by governmental agencies and certain public utilities are unconstitutionally discriminatory.[4] The statutes exempt these persons only while "acting solely" for railroad systems and for federal agencies.[5] Activities engaged in by them in other capacities are not exempt, so long as such activities fall within the statutory definition of the "practice of land surveying". There is no evidence that railroads or governmental agencies engage in the regulated activities to any substantial degree, and their use of surveyors in other types of work is not subject to the statute, by definition. These entities usually possess the power of eminent domain in connection with their acquisition of property rights, and of course they are required to respond with just compensation to landowners in that regard. Facially, we cannot say that the exemption of land surveyors acting solely for these bodies is palpably discriminatory, and we do not have the benefit of any evidence tending to substantiate the contentions of appellant.

It is our opinion that the practice of land surveying, as defined in this statute, does affect the public interest and is an activity which may validly be regulated by the General Assembly. We have carefully considered all of the contentions of appellant, and find them to be without merit. On the contrary, we agree with the Chancellor that the statutes in question are not shown by this record to be vulnerable to the constitutional attacks made upon them by appellant.

The judgment of the Chancellor is affirmed at the cost of appellant.

COOPER, C. J., and HENRY and BROCK, JJ., concur.

FONES, J., dissents.

---

3. T.C.A. § 62–1820(7).

4. T.C.A. § 62–1820(5).

5. The statutes exempted employees of the state and local governments initially, but "only until the expiration of the existing term of office of such employees." T.C.A. § 62–1820(6).