IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief June 24, 2004

## AMERICAN CHARIOT, ET AL. v. CITY OF MEMPHIS, TENNESSEE, ET AL.

**Direct Appeal from the Chancery Court for Shelby County
No. CH-02-1350-3     D. J. Alissandratos, Chancellor**

---

**No. W2004-00014-COA-R3-CV - Filed August 19, 2004**

---

Plaintiffs, horse-drawn carriage operators, filed a declaratory judgment action challenging the constitutionality of a provision of one section of an ordinance adopted by the Memphis City Council. The trial court elided the provision as an unlawful delegation of the City's police power and enforced the remainder of the ordinance. Plaintiffs appeal, asserting the trial court erred in its application of the doctrine of elision. Defendants cross-appeal, asserting the trial court erred by finding the elided portion unconstitutional. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Dan M. Norwood, Memphis, Tennessee, for the appellants, American Chariot; Memphis Carriage; Inc.; Dancing Horse Carriages, Inc.; Uptown Carriage Tours; and Downtown Carriage Tours.

Allan J. Wade and Lori Hackleman Patterson, Memphis, Tennessee, for the appellees, City of Memphis, Tennessee; the Memphis City Council; Willie Herenton, Mayor of the City of Memphis, Tennessee; Richard Merrill, City Traffic Engineer; and Walter Crews, Chief of Police.

### OPINION

American Chariot; Memphis Carriage, Inc.; Dancing Horse Carriages, Inc.; Uptown Carriage Tours; and Downtown Carriage Tours ("Plaintiffs") operate horse-drawn carriages in the city of Memphis, Tennessee. Pursuant to its police power, the City of Memphis regulates the operation of the carriages. Operations are regulated by Section 39-71, *et seq.*, of the Code of Ordinances ("the City Code"). In May 2002, the Memphis City Council ("the Council") approved Ordinance No. 4941 ("the Ordinance") which, amended, *inter alia*, Section 39-119(a) ("the Section") of the City Code. The Section provided:

By amending Section 39-119(a) to read as follows:

Private or other vehicles for hire shall not at any time occupy the space upon the streets that have been established as horse drawn carriage stands.

> From and after July 21, 2002, said horse drawn carriage stands shall at all times be restricted to a minimum distance of one hundred (100) feet from the threshold of any establishment or enterprise whose main business is the serving of restaurant clientele or food serving processes, unless said restaurant owner gives his consent that a horse drawn carriage may be located within the one hundred (100) feet minimum distance from its threshold, and all written consents to go to the City's department of engineering.

In July 2002, Plaintiffs filed a complaint for declaratory judgment in the Shelby County Chancery Court against the City of Memphis; the Memphis City Council; Willie Herenton, Mayor; Richard Merrill, City Traffic Engineer; and Walter Crews, Chief of Police (collectively, "the City"). In their complaint, Plaintiffs challenged the constitutionality of this Section and sought an injunction against its enforcement. Plaintiffs asserted that the action taken by the City Council to amend Section 39-119(a) is arbitrary, capricious and contrary to law and, if enforced, would cause immediate and irreparable harm to their businesses. They further asserted that the Section discriminates between classes of businesses without any legitimate basis, and is an unlawful restraint of trade in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of the Constitution of the State of Tennessee. Plaintiffs also complained that the portion of the Section which waives the distance requirement where a "restaurant owner gives his consent that a horse drawn carriage may be located within the one hundred (100) feet minimum distance from its threshold, and all written consents to go to the City's department of engineering" (hereinafter "the consent provision") unlawfully delegates the police power of the City to individual restaurant owners.

On August 15, 2002, the trial court granted Plaintiffs' application for temporary injunction and enjoined the City from taking any action to implement or enforce the Section. Following a hearing on the merits, the trial court entered its final judgment in October 2003. The trial court denied Plaintiffs' application for permanent injunction but determined the consent provision was an unlawful delegation of legislative and/or police power. The trial court determined the Section was not unconstitutional absent the consent provision. Accordingly, the trial court elided the consent portion and enforced the remainder of the Section, thereby restricting horse-drawn carriage stands to a minimum distance of 100 feet from the threshold of a restaurant or food serving process. Plaintiffs filed their notice of appeal to this Court on November 17, 2003. We affirm.

## Issues Presented

On appeal, Plaintiffs contend the trial court erred in applying the doctrine of elision to elide the unconstitutional consent provision and in enforcing the remainder of the Section as constitutional and effective. The City raises the issue of whether the trial court erred in ruling that the consent provision was an improper delegation of the City's legislative or police power and, accordingly, in eliding that portion. The City argues, in the alternative, that if the consent provision is an improper delegation of authority, the trial court properly applied the doctrine of elision.

## Standard of Review

We review a trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Our review of a trial court's determinations on questions of law, however, is *de novo*, with no presumption of correctness. *Gonzalez v. State Dep't of Children's Servs.*, 136 S.W.3d 613, 616 (Tenn. 2004).

## Analysis

Plaintiffs assert that the unlawful consent provision was an integral and necessary part of the Section, and that the City Council would not have enacted the Section without it. They submit that the trial court, therefore, erred by applying the doctrine of elision to strike the consent provision and enforce the remainder of the Section. Plaintiffs argue that since the unlawful provision cannot be elided from the Section, the entire Section must be found unconstitutional. Plaintiffs do not raise the issue of whether the Section is unconstitutional absent the consent provision in this Court.

The City, on the other hand, asserts the consent provision is not an unlawful delegation of authority. It accordingly agrees with Plaintiffs that the trial court erred by eliding the provision, but asserts the Section is a constitutional and lawful exercise of the City's police power in its entirety. In the alternative, the City submits that if the consent provision is unlawful, the trial court properly elided it and enforced the remainder of the Section.

We must begin our analysis by determining whether the consent provision, which allows individual restaurant owners to waive the minimum standing distance requirement, is an unlawful delegation of the City's police power. The City acknowledges that it may not delegate its police or legislative powers to private citizens. However, it relies on *Davis v. Blount County Beer Board*, 621 S.W.2d 149 (Tenn. 1981) to argue that "to allow an adjoining landowner or those in a shared locality to consent to an otherwise illegal or improper use is not an invalid delegation of police powers."

In *Davis v. Blount County*, the Tennessee Supreme Court considered the constitutionality of a county resolution requiring a beer board to deny an otherwise qualified applicant a permit to sell beer within 300 feet of a residential dwelling where the owner of the residence appeared in person

before the beer board to object to the issuance of the permit. *Davis v. Blount County Beer Bd.*, 621 S.W.2d at 150. The court held the resolution was not an unlawful delegation of authority as "[t]he protesting owner . . . exercises no legislative power; he merely protests or fails to protest. He can neither grant nor deny a permit for the sale of beer." *Id.* at 152. The court acknowledged that "the effect of a protest is to deny the permit," but concluded "that effect is derived from the legislative enactment and the ordinance passed pursuant thereto, not from the residence owner." *Id.*

In reaching its holding in *Davis*, the court analyzed several cases from other jurisdictions, including the leading case of *Cusack Company v. Chicago*, 242 U.S. 526, 37 S.Ct 190, 61 L.Ed. 472 (1917). In *Cusack*, the United States Supreme Court upheld an ordinance which required the written consent of the owners of a majority of the frontage property on both sides of the street before any billboard above a specified size could be erected in a block in which one-half of the buildings were used exclusively for residential purposes. *Id.* at 151-152. The *Cusack* court stated,

> [t]he ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification . . . [it] permits one half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances.

*Id.* at 152 (quoting *Cusack*, 37 S.Ct. at 192). The *Davis* court further noted that the Blount County resolution "does not unlawfully delegate the power to grant licenses or make arbitrary or unjust discrimination between applicants; nor is it objectionable as conferring arbitrary powers on property owners[.]" *Id.* (quoting 45 Am. Jur. 2d *Intoxicating Liquors* § 156 (1969) at 599).

The City asserts that the consent provision in the case at bar is not an improper delegation of authority where it allows those most affected by the Ordinance to waive the prohibition. We disagree. The Ordinance at bar prohibits horse-drawn carriages from standing within 100 feet of a restaurant not for the protection of the restaurant business *per se*, but as a matter of public health and welfare. As the trial court noted,

> [a]lthough the City Council has mindfully structured rules that allow for the inclusion of these animals in the downtown are of the City, the City Council was also mindful of the issues of smell, urination and sanitation when it created and passed Ordinance 4941. These issues constitute a rational basis for regulating horse-drawn carriages and for prohibiting horse-drawn carriage stands from being located within 100 feet of the threshold of "any establishment or enterprise whose main business is the serving of restaurant clientele or food serving processes."

Further, the Section is part of a lengthy ordinance which regulates not only horse-drawn carriages, but vehicles for hire (including taxicabs and limousines) in general. Other provisions of the Ordinance relating to horse-drawn carriages provide, *inter alia*, for limiting the number of horse-

drawn carriages to no more than 50; for the issuance and revocation of Certificates of public convenience; for the training of carriage drivers; for the conditions relating to carriage driver permits; for a driver dress code; and for inspection of carriages and horses. Thus, the Section is part of an overall regulatory scheme affecting matters of public health and welfare.

Unlike the ordinances in *Davis* and *Cusack*, the Ordinance at bar is not primarily for the benefit of property owners, but their clientele and the general public. The City Council has determined that citizens and visitors who must traverse the pathways of horse-drawn carriage stands, with their attendant odors, refuse, and pests, in order to attempt to enjoy a meal while separated from those odors only by frequently open doors and windows, are best protected by prohibiting these animals from standing within 100 feet of the threshold of a restaurant. The consent provision permits restaurant owners to waive a restriction which serves to protect the public health and welfare. Further, although the provision requires such consent to be in writing and sent the City's department of Engineering, it contains no standards for determining when such a waiver is appropriate or for review by the City of whether the waiver adversely affects those the Section protects.

The consent provision in the Ordinance at bar permits private citizens to determine whether a specific use of public thoroughfares would be detrimental to the public health and welfare. It permits private citizens to arbitrarily and capriciously waive an otherwise legal restriction which serves the public welfare. Accordingly, we agree with the trial court that the consent provision unlawfully delegates the City's police and legislative powers to private citizens.

We next turn to Plaintiffs' assertion that the doctrine of elision is not applicable to the Section and that, accordingly, the unlawful consent provision renders the entire Section unlawful. The doctrine of elision permits a court, under appropriate circumstances, to elide a portion of a statute or legislative act which it finds unconstitutional, and to enforce the remainder as constitutional and effective. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 22 (Tenn. 2000) (quoting *State ex. rel Barker v. Harmon*, 882 S.W.2d 352, 355 (Tenn. 1994)). Unconstitutional portions may be elided when doing so would not undermine the legislative intent of the statute. *Id.* The doctrine of elision is not applicable where the legislature would not have enacted the statute without the provision determined by the court to be unconstitutional. *Id.*; *Ford Motor Co. v. Pace*, 335 S.W.2d 360, 369 (Tenn. 1960). However, when the court concludes that the legislature would have enacted the legislation without the unconstitutional provision, elision is appropriate. *In re Swanson*, 2 S.W.3d 180, 189 (Tenn. 1999).

The inclusion by the legislature of a severability clause in the statute is evidence of the legislature's intent that valid portions of the statute be enforced where the court determines that other portions are unconstitutional. *State v. Tester*, 879 S.W.2d 823, 830 (Tenn. 1994). However, there must be enough left of the statute "for a complete law capable of enforcement and fairly answering the object of its passage." *Id.* Further, "[w]here a clause is so interwoven with other portions of an act that we cannot suppose that the legislature would have passed the act with that clause omitted, then if such clause is declared void, it renders the whole act null." *Id.* (quoting *Hart v. City of Johnson City*, 801 S.W.2d 512, 517 (Tenn. 1990)). The courts have often applied the doctrine of

elision where statutes include severability clauses unless such application would undermine or frustrate the object of the act. *Lowe's Cos., Inc. v. Cardwell, Comm'n of Revenue*, 813 S.W.2d 428, 431 (Tenn. 1991).

We note that the Ordinance at bar includes a broad severability clause which provides: "If any of these sections, provisions, sentences, clauses, phrases or parts are held unconstitutional or void, the remainder of this Ordinance shall continue in full force and effect." Plaintiffs assert, however, that the doctrine of elision is not applicable to the Section despite this severability clause. They contend the doctrine of elision cannot be applied to the Section because the consent provision is the result of a compromise reached by the City Council, that it was an inducement to the passage of the Section, and that the City Council would not have passed the Section without the provision.

After reviewing the entire Ordinance and the transcriptions of relevant parts of the official audio tapes maintained by the City Council from City Council Public Safety Committee and Memphis City Council meetings, we disagree. The meeting minutes reflect that the Ordinance was part of lengthy effort to address the regulation of all vehicles for hire, not just horse-drawn carriages. The portions pertaining to horse-drawn carriages addressed the health and safety issues raised by those carriages, as well as the operation of the carriages as one type of vehicle for hire. Although the consent provision was added to the Section after opposition to the restrictions on horse-drawn carriages was voiced by Plaintiffs at the meetings, we agree with the trial court that it was not inducement to the passage of the Section. Rather, it is a minor clause of a lengthy and sweeping ordinance amending the regulation of vehicles for hire in general, and horse-drawn carriages in particular. Clearly, the Section fulfills its objective of protecting the public health and welfare absent the consent provision. We accordingly affirm the application of the doctrine of elision to this case.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the Appellants, American Chariot; Memphis Carriage, Inc.; Dancing Horse Carriages, Inc.; Uptown Carriage Tours; Downtown Carriage Tours; and to their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE